629 A.2d 1002

**Dustin Elwood KELLY, A Minor, by Lisa KELLY, His Mother and Natural Guardian; and Lisa Kelly, In Her Own Right; and Roy Kelly In His Own Right, Appellants,**

**v.**

**David R. ICKES, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued June 22, 1993.

Filed Aug. 9, 1993.

544

James B. Cole, Pittsburgh, for appellants.

Amy E. Livermore, Hollidaysburg, for appellee.

Before OLSZEWSKI, HOFFMAN and BROSKY, JJ.

OLSZEWSKI, Judge:

This is an appeal from the Honorable Norman D. Callan's order granting summary judgment in favor of appellee, David R. Ickes. Appellants brought this negligence action against Ickes on behalf of their minor son, Dustin, who suffered severe injuries from a fall inside their premises. We reverse the entry of summary judgment and remand for trial.

Lisa Kelly ["Kelly"] resided with her husband and two infant children in an apartment owned and leased to her by Ickes.[1] The apartment is a duplex with an open staircase. Kelly testified in a deposition that she told Ickes on several occasions that without a railing, the staircase presented a hazard to her children. Ickes promised on several occasions to install a railing; during one visit to Kelly's apartment, Ickes refused to install a wooden post that Kelly's father gave her specifically to remedy the problem. Ickes contended that the post was too wide for the bottom of the stairs and that "he would probably just have to run posts down" in order to correctly resolve the problem. Ickes never returned to do the job, however, and on December 1, 1988, Dustin fell and injured himself.

1. Ickes purchased the property from a previous owner in 1985, at which time he entered into a written lease agreement with the Kellys, who lived in the premises at the time of the ownership change. A copy of the lease was not made a part of the record; Kelly testified in her deposition that Ickes did not provide her with a copy when she signed it in 1985.

Lisa and Roy Kelly instituted this action on Dustin's behalf, alleging that Ickes assumed a duty to repair the staircase, which he performed negligently. After the pleadings were closed and discovery was final, defendant moved for summary judgment. Judge Callan granted the motion, holding that Ickes, as an out-of-possession landlord, is not responsible for dangerous conditions that are known to the tenant, unless he contracted to repair them and refused to do so. *Klais et ux. v. Guiton*, 344 Pa. 600, 26 A.2d 293 (1942); *see Kobylinski v. Hipps*, 359 Pa.Super. 549, 519 A.2d 488 (1986). The trial court found that since there was no consideration for any of Ickes' promises to fix the staircase, he could not be found liable for refusing or negligently performing the repairs. Judge Callan relied on *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968), and § 357 of the Restatement (Second) of Torts for this proposition.

On appeal, Kelly argues that summary judgment was improperly granted because genuine issues of material fact exist as to whether Ickes promised to repair the staircase and whether Kelly relied on the promise by not taking independent measures to have a railing installed. She contends that a factual dispute brings this case within the ambit of § 323 of the Restatement (Second) of Torts, which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*Id.* We agree. Before reaching the merits of the argument, however, we must review the standard for awarding summary judgment and consider Ickes' argument that Kelly has waived the invocation of § 323 to oppose entry of summary judgment by failing to argue its application below.

■■■■ In summary judgment proceedings, the court's function is not to determine the facts but only to determine if a material issue of fact exists. *McDonald v. Marriott, Inc.*, 388 Pa.Super. 121, 564 A.2d 1296 (1989); *Ackler v. Raymark Industries, Inc.*, 380 Pa.Super. 183, 551 A.2d 291 (1988). Summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. Rule 1035(b), 42 Pa.C.S.A. The trial court must examine the record in the light most favorable to the non-moving party and accept as true all well-pleaded facts in his or her pleadings as well as give him or her the benefit of all reasonable inferences drawn therefrom. *Dibble v. Security of America Life Ins.*, 404 Pa.Super. 205, 590 A.2d 352 (1991); *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 577 A.2d 631 (1990). Finally, summary judgment should be granted only in cases that are free and clear of doubt. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). We must reverse if the trial court has committed an error of law or has committed a manifest abuse of discretion. *Carns v. Yingling*, 406 Pa.Super. 279, 594 A.2d 337 (1991).

Here, the trial court granted the motion for summary judgment, on the basis that Ickes did not contractually undertake a duty to repair the staircase and he could not be liable for failing to do so. The trial court did not consider the applicability of § 323 of the Restatement (Second) of Torts, however, which imposes liability for personal injury where a landowner "gratuitously" undertakes to provide a service for the protection of the promisee, if the promisee suffers harm as a result of relying on the promise. Ickes contends that this deficiency is attributable to Kelly, since she failed to file a response to his motion for summary judgment and did not raise the issue in her brief opposing the motion.[2] Thus, Ickes

**2.** Ickes contends that the parties waived oral argument on his motion for summary judgment, submitting the issue to Judge Callan for resolution on the briefs. Interestingly, however, the briefs were not made a

claims that Kelly has waived the issue as presented to this Court. *See* Pa.R.A.P. Rule 302, 42 Pa.C.S.A. (issues not raised before trial court may not be raised for first time on appeal). We disagree.

Contrary to what Ickes argues, a party opposing a motion for summary judgment is not required to file a responsive pleading, and the failure to do so does not amount to waiver of issues that could have been raised. *Moore v. Gates,* 398 Pa.Super. 211, 580 A.2d 1138 (1990), *alloc. denied,* 527 Pa. 617, 590 A.2d 758 (1991). As we have stated:

> [F]ailure to raise the issue of inadequate support for a motion for summary judgment does not result in waiver of that issue since the trial judge has a duty to deny such motions even if the opposing party has not responded.

*Johnson v. Johnson,* 410 Pa.Super. 631, 636, 600 A.2d 965, 967 (1991). In *Johnson,* we addressed the non-movant's argument that summary judgment was improperly entered in violation of *Nanty–Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932), even though the issue was not raised in the lower court. *Id.; see also Garcia v. Savage,* 402 Pa.Super. 324, 586 A.2d 1375 (1991) (*Nanty–Glo* issue not waived on appeal for failing to file response to summary judgment motion in trial court). We acknowledge that although Kelly did not file a responsive pleading opposing the summary judgment motion, she did file a brief opposing the motion which did not refer to § 323 of the Restatement. In this respect, the present case differs from *Johnson* and *Garcia,* since in those cases it appears that the parties opposing summary judgment filed no response at all to the summary judgment motion, and we held that the choice to forego filing a response could not be held against them on appeal.

part of the record, and Ickes made no effort to supplement the reproduced record to substantiate his claim that Kelly never mentioned § 323 of the Restatement (Second) of Torts below. Since we resolve the issue against Ickes by assuming that what he claims is true, *see infra,* we will not engage in a discussion of who bore the burden of completing the record in this regard.

We are not persuaded, however, that Kelly's presentation of a "new theory" on appeal operates as a waiver of her right to oppose entry of summary judgment on those grounds. Although Ickes correctly asserts that this Court will normally not entertain a theory on appeal that was not presented below, the justification behind this policy is not implicated when a party is in the position of opposing a summary judgment motion. In both *Garcia* and *Johnson, supra,* we did not find waiver because the trial judge is under a duty, regardless of whether the non-movant files a response, to review the entire record to determine whether a genuine issue of material fact exists, and whether the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). This duty should not change when the moving party chooses to file an argument in opposition, even though the argument does not specifically refer to authority supporting a cause of action which it has thoroughly pled and supported through the discovery process. A trial judge may grant summary judgment only in cases that are clear and free of doubt. *Marks, supra.* Summary judgment is therefore improper in any case where the pleadings and discovery indicate that there are factual issues that, if resolved in favor of the non-movant at trial, will justify recovery under any theory. Since it is clear that § 323 of the Restatement (Second) of Torts is recognized as the law in this Commonwealth, *see Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984); *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980), Ickes' motion was improperly granted if factual question exist which would entitle Kelly to recover under this theory.

We recognize that this holding places a burden on the trial judge to discover plaintiff's theory of the case. This burden, however, is not unorthodox; at the demurrer stage, it is always incumbent upon the trial judge to determine whether the facts pled in the complaint state any theory upon which plaintiff may recover. *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973 (1985). In this case, the summary judgment motion was more akin to a demurrer than a true motion for summary judgment, since the trial court held that even if the factual issues presented by the non-movant were

proven at trial, she would not be entitled to relief as a matter of law. It might have been less time consuming, and certainly more prudent, for Kelly to identify § 323 by name, but her failure to do so cannot be held against her. If she has pled facts that state a cause of action under Pennsylvania law, and the discovery reveals factual issues regarding those allegations, summary judgment is improper. Kelly did not waive the issue, and we will address it.

The essence of § 323 of the Restatement (Second) of Torts as it applies to landlord/tenant cases is that where the landlord undertakes, gratuitously or for consideration, to perform a service for his tenant which he recognizes as necessary for the tenant's protection, he is liable for harm caused by his refusal to perform or negligence in performing, if tenant has relied on the promise. Thus, in both *Feld, supra,* and *Reider v. Martin,* 359 Pa.Super. 586, 519 A.2d 507 (1987), *alloc. denied,* 517 Pa. 594, 535 A.2d 83 (1987), our appellate courts held that a landlord could be liable for injuries caused to tenants by third-party felons if the tenants could establish that they relied on the landlord's undertaking to provide them with a security protection system. Here, Ickes is liable to Kelly for injury suffered as a result of the dangerous condition if she can prove at trial that Ickes knew that repairing the staircase was necessary for the protection of her child, and that she relied on his promise to alleviate the condition.

Discovery and the pleadings in this case clearly create factual questions as to these issues. Kelly testified that she informed Ickes on several occasions of the problems, and that Ickes promised her that he would install a handrail. She also began an affirmative effort to repair the premises on her own by procuring a wooden post from her father. Since Ickes told her that the wooden post was unacceptable and assured her that he would remedy the situation by himself, a jury could easily infer that she relied on Ickes' promise to install a handrail, and that Dustin's fall was a proximate result of Ickes' failure to repair. We recognize that Ickes claims that he never made any promises, but a jury must resolve the contradiction in the testimony.

We also disagree with the trial court's conclusion that any of Ickes' promises were unsupported by consideration and that Kelly's claims are barred by the parol evidence rule. Both Ickes and the trial court rely heavily on *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968). Their reliance is misplaced.

In *Reitmeyer*, plaintiff/tenant was injured after falling on her defective rear porch floor. Tenant alleged in her complaint that landlord was aware of the defect and that as an inducement to enter into the lease agreement he promised to fix the porch. In ruling on landlord's demurrer, our Supreme Court abandoned the rule that a contractual promise to repair a defect in the leased premises at the time the tenant took possession did not impose upon the landlord liability in tort if the tenant sustained injuries as a result of the defect. Instead, the Court adopted a more liberal rule, embodied in the Restatement (Second) of Torts, § 357:

A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if

(a) the lessor, as such, has contracted by covenant in the lease or otherwise to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

(c) the lessor fails to exercise reasonable care to perform his contract.

*Id.* at 287, 243 A.2d at 396. The Court held that since landlord's promise to fix the porch was supported by consideration (as a result of the promise tenant entered into the lease agreement), he could be held liable in tort under § 357 if he proximately caused tenant's injuries by failing to exercise reasonable care in making the repairs. *Id.* at 290, 243 A.2d at 398.

Here, Judge Callan held, and appellee urges, that since the record contains no indication that Kelly was induced to enter into the lease agreement in reliance on Ickes' promise to repair the staircase, any promise by Ickes is unsupported by consideration, rendering § 357 inapplicable. We disagree. Although the record contains no factual issues which would establish that Ickes' promise induced Kelly to enter into a lease, § 357 is not limited to the factual scenario present in *Reitmeyer.* The Supreme Court's purpose in adopting the rule was much more broad. The rule is designed to place a tenant on equal footing with his or her landlord, simply by holding a landlord responsible for the safety of tenants when he has retained "control" over a portion of the leased premises by contractually agreeing to maintain it. *Id.* at 288–89, 243 A.2d at 397. The Court also pointed out that the rule is justified because "by reason of the special relation between a landlord and tenant, there is a likelihood that the latter will rely on the former to make repairs and be induced to forego efforts which he would otherwise make to remedy a dangerous condition on the premises." *Id.* Indeed, § 357 indicates that a lessor may undertake the duty as a covenant in the lease or "otherwise." Moreover, the section anticipates that a landlord may contractually assume a duty to repair after the lease agreement is signed, because it applies not only to conditions that exist at the time the tenant takes possession, but also to defects "arising after the lessee has taken possession." Thus, Kelly and Ickes could have entered into a contractual agreement for the repair of the staircase that was independent of the lease.

Here, we find that the pleadings, depositions, and answers to interrogatories provide a genuine issue of material fact regarding whether Ickes undertook a contractual obligation to repair the staircase. As we have noted, Kelly testified in her deposition that during a visit by Ickes sometime after Ickes had become landlord of her premises, Ickes dissuaded her from installing a wooden pole which her father gave her to remedy the defect. *See* R.R. at 46a. This testimony supports a reasonable inference that Kelly forbore

from remedying the situation herself, or hiring someone else to install the pole. This forbearance would, if proven, act as consideration for Ickes' promise to repair the stairs.[3] As such, it cannot be held that it is "clear and free from doubt" that Ickes is entitled to judgment as a matter of law.

We are mindful of our position as an appellate court reviewing summary judgment and in no way attempt to resolve the substantive dispute between Kelly and Ickes. We do feel, however, that summary judgment is a procedural device best kept for those cases in which a trial would be a fruitless effort for plaintiff. Here, however, the record is clear that Kelly has established genuine issues of material fact under the Restatement (Second) of Torts, §§ 323 and 357. She is entitled to have a jury hear her evidence.

Judgment reversed; case remanded for trial. Jurisdiction relinquished.

**3.** Consideration sufficient to support the existence of a contract confers a benefit upon the promisor or a detriment upon the promisee; a "bargained for exchange." *Dahar v. Grzandziel*, 410 Pa.Super. 85, 599 A.2d 217 (1991). Here, if Kelly can prove that she would have installed the pole but for Ickes' promise that he would remedy the situation, Ickes clearly benefitted from this forbearance because he received what he bargained for—he did not want that pole installed.

Moreover, since the alleged contractual duty occurred after the execution of the lease agreement, the parol evidence rule is not implicated. *Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968).