**ADELVISION, L.P., formerly known as Adelphia Cablevision Associates of Radnor, L.P., Plaintiff–Stakeholder,**

v.

**Horace E. GROFF, David R. Cook, Department of the Treasury of the United States of America, and Department of Labor and Industry of the Commonwealth of Pennsylvania, Defendants–Claimants.**

Civ. A. No. 93–CV–829.

United States District Court,
E.D. Pennsylvania.

July 25, 1994.

Order of Amendment Aug. 4, 1994.

Order on Motion to Alter or
Amend Judgment
Aug. 11, 1994.

Gavin P. Lentz, and Frank B. Tracy, Philadelphia, PA, for defendants Groff and Cook.

Carol C. Priest, Washington, DC, for defendant Dept. of the Treasury of the U.S. of America.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This interpleader action concerns a priority dispute between a federal tax lien and an investor's security interest in a limited partnership. The parties have stipulated to the facts and present this case for resolution on cross-motions for summary judgment. The court is asked to determine the relative rights of the defendants to $794,382.00 in proceeds from the liquidation of (5) limited partnership units of plaintiff Adelvision, L.P. ("Adelvision"). Adelvision and the Pennsylvania Department of Labor and Industry have been dismissed as parties to this action, and David R. Cook ("Cook"), Horace E. Groff ("Groff") and the United States of America now claim an interest in the five liquidated Adelvision units. The court relies upon the Stipulated Statement of Facts in rendering this decision, but for purposes of

clarity and context, sets forth the following summary of facts, which includes certain explanatory remarks concerning the procedural posture of the case.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant Groff, a businessman who resides and does business in Lancaster County, Pennsylvania, was involved with several food companies, the most significant of which were G.P.C., Inc. and Wilson Nut Company. Stipulation, ¶¶ 7–8. In August 1986, Groff caused G.P.C., Inc. and the Wilson Nut Company to enter into loan arrangements with Hamilton Bank of Lancaster, Pennsylvania, whereby Hamilton Bank extended term loans and lines of credit to the two companies in the amount of $3,210,000.00. Stipulation, ¶¶ 9–10; Stip. Exhibit "A".

In February 1987, these loan agreements were first amended and an additional line of credit of $700,000.00 was extended to G.P.C. At that time, Groff and his wife, Susan, also entered into a guarantee agreement for repayment of the Hamilton debt. Stipulation, ¶ 11; Stip. Exhibit "B". The Hamilton loans were secured by all the tangible and intangible property of G.P.C., mortgages on Groff's personal residence and other real property owned by Groff, pledges of promissory notes, and stock in other companies, as well as the assignment of a non-competition agreement. Stipulation, ¶ 15.

In the early 1980s, Groff also purchased five (5) partnership units of Adelphia Cablevision Associates of Radnor, L.P., now known as Adelvision ("Adelvision Units"). The partnership units gave Groff a right to share in the ownership and profits of the partnership as a limited partner. Groff retained ownership of the five Adelvision Units through December 1, 1992. However, these Units were not pledged to Hamilton Bank as security for the notes described above. Stipulation, ¶ 16.

Despite the influx of borrowed funds from Hamilton Bank, Groff's companies continued to experience financial difficulties. As a result, Groff and Hamilton Bank amended the aforementioned loan agreements a total of six (6) times, thereby reducing the lines of credit and extending the time for payment of the loan obligations. Stipulation, ¶ 13; Stip. Exhibit "C". As of November 12, 1991, the balance owed by Groff on five (5) separate notes totaled $2,670,885.00. Stipulation, ¶ 14. At that time, the loans were in default and Hamilton considered the collateral securing the bank loans as possibly insufficient to cover the repayment of the loans. Stipulation, ¶¶ 24 and 26. In fact, the asset value of the loans had been reduced on Hamilton Bank's balance sheet by at least $1,000,-000.00. Stipulation, ¶ 24.

In late 1990 and into 1991, Mr. David R. Cook, acting through his agent and representative, Francis P. Dougherty ("Dougherty"), entered into negotiations with Hamilton Bank about the possible purchase of Groff's loan obligations to the Bank. At that time, Dougherty, also on behalf of Cook, initiated discussions with Groff about the possibility of investing in Groff's companies. Stipulation, ¶ 17. The parties also discussed whether Groff could provide additional security with respect to Groff's Hamilton Bank loans if Cook agreed to purchase those loans from the bank. Stipulation, ¶ 18.

By Agreement signed by the parties dated November 12, 1991, an accord was reached between Groff and Cook over the purchase of the Hamilton Bank loans. In the Agreement, Groff stated that he would grant a security interest in the five (5) Adelvision Units to Cook so long as Cook purchased the loans from Hamilton Bank for $1,050,000.00. Stipulation, ¶ 19; Stip. Exhibit "D". Groff performed his obligation by executing a Security Agreement conveying the security interest in the five (5) Adelvision Units to Cook. Stipulation, ¶ 20; Stip. Exhibit "E".

On November 13, 1991, in performance of his obligation to Groff, Cook entered into a General Conveyance, Assignment and Bill of Sale with Hamilton Bank, pursuant to which Hamilton assigned the loans to Cook who in turn wired $1,050,000.00 to Hamilton Bank that day. Stipulation, ¶ 21; Stip. Exhibit "F". Finally, Financing Statements, specifically describing the collateral offered to Cook in the Security Agreement between the parties, were signed by Groff and filed in the

Office of the Prothonotary of Lancaster County and the Department of Secretary of State of the Commonwealth of Pennsylvania on November 18, 1991 and December 9, 1991, respectively. Stipulation, ¶ 22; Stip. Exhibit "G".

At the time of these transactions, Cook believed that Groff's companies, if permitted to operate and not liquidated, might in the future become profitable enough to participate in the repayment of the loans. Stipulation, ¶ 27. This belief, together with liquidation proceeds of additional security given by Groff, including the five Adelvision Units that are at issue here, accorded Cook reasonable prospects of recovering his investment in the loans and of making a profit as well. *Id.* For these reasons, Cook, with the advice and counsel of Dougherty, has not pressed for payment of the loans nor has instituted foreclosure proceedings against Groff to date. *Id.*

The United States now comes before the court asserting several claims for taxes against Groff. Specifically, tax liens are claimed on the five Adelvision Units belonging to Groff, by virtue of unpaid federal taxes plus statutory additions, in the amounts and for the periods indicated below:

| TYPE OF TAX | PERIOD ENDING | DATE ASSESSED | AMOUNT |
|---|---|---|---|
| 100% Penalty | 03/31/87 | 10/31/91 | $194,404.03[1] |
| Income | 1989 | 12/30/91 | $93,899.78 |
| Income | 1990 | 12/30/91 | $110,444.34 |
| Income | 1988 | 10/20/92 | $103.28 |
| Income | 1991 | 12/28/92 | $122,043.70 |

Stipulation, ¶ 28.

In addition to the above assessments, a notice of federal tax liens was filed on January 27, 1994 by the United States in Lancaster County against Groff for additional tax liabilities as follows:

| TYPE OF TAX | PERIOD ENDING | AMOUNT |
|---|---|---|
| Income | 1985 | $343,425.44 |
| Income | 1986 | $262,847.39 |
| Income | 1987 | $180,456.38 |
| Income | 1988 | $152,536.52 |
| Income | 1989 | $88,455.95 |

*See* U.S. Exhibit "C".

■ On December 16, 1992, plaintiff Adelvision sold all of its assets to a third party. Adelvision originally brought this action in the Court of Common Pleas for Lancaster County, in order to establish the priority of conflicting claims to the $794,382.00 from the sale of the five Adelvision Units. The proceeds are now in the custody of the court. The action was removed to this court on or about February 17, 1993, and all parties have filed an answer to the plaintiff's complaint. On October 25, 1993, the plaintiff was dismissed from this action with prejudice by Stipulated Order. Also, on or about December 15, 1993, defendant Department of Labor

1. Parties agree that the Notice of Tax Lien in the amount of $194,404.03 assessed against Groff on account of a 100% penalty was filed in proper form with the Prothonotary of the Court of Common Pleas of Lancaster County, Pennsylvania on October 21, 1991. Since this particular lien was filed before the Security Agreement between Groff and Cook was consummated on November 12, 1991, Cook does not dispute the United States' claim of priority for the amount of $194,-404.03. Although the priority of the lien is conceded for purposes of this action, defendant Groff nevertheless retains his objection to the underlying tax liability.

and Industry of the Commonwealth of Pennsylvania filed a voluntary Notice of Dismissal of its claims in this matter.[2] Therefore, the only parties that continue to claim an interest in the Adelvision fund are the United States, Mr. Groff and Mr. Cook. We will now review remaining defendants' claims on the contested Adelvision property.

## II. STANDARD FOR SUMMARY JUDGMENT

In considering a motion for summary judgment, we must examine the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The standard does not change when the issues are presented in the context of cross-motions for summary judgment. *Appelmans v. City of Philadelphia,* 826 F.2d 214 (3d Cir.1987); *see also, Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 700 F.Supp. 838, 840 (W.D.Pa.1988).

## III. DISCUSSION

The central issue in this case is whether Cook's interest under the Groff Agreement and Security Agreement is superior to the Internal Revenue Service's ("IRS") tax liens. The IRS claims the contested five liquidated Adelvision Units pursuant to six (6) separate federal tax liens totaling $1,548,616.81 filed against Groff. Cook claims the fund by virtue of a perfected security interest in the five Adelvision Units granted to him pursuant to the Groff Agreement and Security Agreement dated November 12, 1991. Groff

claims the fund as the owner of the five Adelvision Units. All that remains to be decided in this action is the priority dispute among the United States, Groff and Cook.[3]

Pursuant to the Internal Revenue Code, 26 U.S.C. § 6321, the failure of any person to pay a tax liability after demand creates a lien upon that person's property. The lien arises "at the time the assessment is made," 26 U.S.C. § 6322, and extends to all property belonging to the taxpayer. *See United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985); *see also 21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* 790 F.2d 354, 356 (3d Cir.1986). A lien arising under § 6321 is afforded priority over all other unperfected liens or claims asserted against the taxpayer's property. 26 U.S.C. § 6323(a). Under § 6323(a), however, an IRS lien is ineffective against certain parties, including a "purchaser, holder of a security interest, mechanic's lien or judgment lien creditor," until the notice of the lien has been properly filed by the government. *Id.; see United States v. Pioneer American Ins. Co.,* 374 U.S. 84, 88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770, 774 (1963).

In this case, the tax liens at issue arose during a period from 1985 to 1991, or more specifically at the dates of assessment. However, only the lien notice with respect to the 100% penalty, recorded on October 21, 1991, was filed prior in time to the filing of Financing Statements that Cook claims perfected his security interest in the five Adelvision Units.[4] Therefore, whether the tax liens

---

2. Because defendant Department of Labor and Industry of the Commonwealth of Pennsylvania filed its voluntary Notice of Dismissal pursuant to Rule 41(c) of the Federal Rules of Civil Procedure *after* a responsive pleading was served in this case, this Notice of Dismissal is technically insufficient to serve as a withdrawal of the Department of Labor's claim to this matter under that provision of the Federal Rules. Nonetheless, the court may act pursuant to Fed.R.Civ.P. 41(b) in acknowledging defendant Department of Labor's Notice of Dismissal and ordering the defendant dismissed without prejudice from this action. Because we deem the terms and conditions of defendant Department of Labor's dismissal to be proper and because no parties to this action challenge the dismissal, we will order the dismissal of Department of Labor's claims.

3. The value of Cook's and the United States' liens will exhaust the interpleaded fund on deposit. However, to the extent that the liens of both the United States and Cook are held to be invalid liens against the property, Groff claims the fund as owner of the proceeds.

4. 26 U.S.C. § 6323(f)(1)(A) provides for the recording of tax liens with respect to the taxpayer's property in accordance with the laws of the state in which the property is situated. The parties do not dispute that the IRS liens at issue here were properly filed in accordance with the requirements set forth in § 6323(f)(1)–(5). *See* Memorandum of Law of Horace E. Groff and David R. Cook, p. 7.

may be enforced against the proceeds of the five Adelvision Units turns on whether Cook's interest falls within one of the four exceptions enumerated in § 6323(a).

It is clear from the outset that Cook is neither a mechanic's lienholder, since his interest does not relate to "construction or improvement of [ ] property," 26 U.S.C. § 6323(h)(2), nor a judgment lienholder, since he has not yet obtained a judgment against Groff. Thus, the court must determine whether Cook qualifies as either a "holder of a security interest" or "purchaser."

■ Section 6323(h)(1) defines "security interest" as follows:

The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such, time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

In the instant case, the court finds that the assignment of Groff's interest in the five Adelvision Units was obviously intended, under the Groff Agreement and Security Agreement, to secure Groff's expected indebtedness to Cook.[5] See Stipulation, ¶¶ 19, 20, 27. Thus, the requirement that Cook's interest be "any interest in property acquired by contract for the purpose of securing payment ..." has been met here. Therefore, the court must go on to determine whether Cook's interest satisfies the requirements of § 6323(h)(1)(A) and (B).

■ Since there is no dispute as to whether the five Adelvision Units were in existence at the time of the execution of the alleged security agreement, see Stipulation, ¶ 16, we turn directly to the question of whether such interest was protected under Pennsylvania law at the time the IRS tax liens attached. In order for a security interest to attach and be enforceable as to property under Pennsylvania law, the following events set forth in the U.C.C. must have occurred:

(1) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral;

(2) value has been given; and

(3) the debtor has rights in the collateral.

13 Pa.C.S.A. § 9203(a). Attachment of the security interest to the collateral occurs when all of these events have taken place, unless an explicit agreement postpones the time of attachment. 13 Pa.C.S.A. § 9203(b). Pennsylvania law also provides that an agreement enforceable with respect to the collateral is likewise enforceable against identifiable cash proceeds from disposition of the collateral. 13 Pa.C.S.A. § 9203(c), § 9306(c)(2).

In this case, there is no dispute that Groff signed both the Agreement and Security Agreement completed with Cook, and that both agreements contain descriptions of the collateral. In addition, Groff retained ownership of the five Adelvision Units during the entire time from the beginning of negotiations with Dougherty and Cook to the time that he submitted the units to the court for liquidation. Therefore, the parties agree that the first and third requirements of en-

---

**5.** Article 1.3 of the Agreement between Groff and Cook entered into on November 12, 1991 states the following, in relevant part:

1.3 *Lien and Security Interests in Groffs Significant Assets.* Subject to the terms and conditions set forth in this Agreement, at the Closing, the Groffs hereby agree to grant a lien, mortgage to pledge, grant *a security interest,* and assign to Mr. Cook all of the significant assets including, without limitation, all certificates of deposit, securities, *interests in partnership* and other assets owned by the Groffs.…

Stip. Exhibit "D" at 2 (emphasis added). Moreover, the third Recital in the Agreement makes clear the parties' intentions:

WHEREAS, the Companies and the Shareholders [,in which Groff has significant interest,] have agreed, pursuant to the terms and provisions of this Agreement, to provide Mr. Cook with the collateral and benefits specified in this Agreement in return for Mr. Cook acquiring the Hamilton Loan Documents[.]

Stip. Exhibit "D" at 1.

forceability under Pennsylvania law have been met.

The only disputed issue here is whether the second condition of § 9203(a) has been met, namely whether some "value" has been given in exchange for the security interest. Local law in this matter is governed by the Uniform Commercial Code ("U.C.C."). 13 Pa.C.S.A. § 9203(a). According to the U.C.C., a person gives "value" for rights if such person acquires them:

(1) in return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection;

(2) as security for or in total or partial satisfaction of a preexisting claim;

(3) by accepting delivery pursuant to a preexisting contract for purchase; or

(4) generally, in return for any consideration sufficient to support a simple contract.

13 Pa.C.S.A. § 1201.

In this case, Cook and Groff cannot assert that "value" was given in exchange for security rights pursuant to the first part of the U.C.C. test because the parties have stipulated that Cook did not give Groff a commitment to extend credit to Groff, and did not immediately make credit available to Groff. Stipulation, ¶ 23. Nor may Cook and Groff rely on the second part of the U.C.C. definition because the parties admit that the preexisting claim was neither totally nor partially satisfied. *Id.* Finally, the third scenario asserted in the U.C.C. definition for deriving "value" in a security transaction is inapplicable here because there was no acceptance of delivery pursuant to a preexisting contract for purchase. Stipulation, ¶ 23, 25. Therefore, in order to prevail on the claim of priority status, Cook and Groff must show that their Agreement satisfied the condition set forth in the fourth part of the U.C.C. test, or more specifically whether consideration was given to Groff to support a simple contract.

### A. Was Consideration Present?

According to classic Pennsylvania law, "[v]alid consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise." *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 72 n. 6, 384 A.2d 1228, 1232 n. 6 (1978); *see also, General Mills, Inc. v. Snavely*, 203 Pa.Super. 162, 199 A.2d 540 (1964).

Pennsylvania courts have joined the current movement among legal scholars which lends support to doctrines that enhance the notion of freedom to contract. This position has led to comments by Pennsylvania courts, such as: "The requirement of consideration, of course, is nothing more than a requirement that there be a bargained for exchange." *Commonwealth, Department of Transportation v. First Pennsylvania Bank*, 77 Pa.Commw. 551, 553, 466 A.2d 753, 754 (1983). Commentators have long acknowledged that a sufficient bargained for exchange, as consideration to support a promise, is evidenced by a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor. *See* Williston, *Williston on Contracts*, § 102, at 375–76 (3d ed. 1957); *see also, Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987); *Gemini Equipment Co. v. Commonwealth of Pennsylvania*, 117 Pa.Commw. 193, 196, 542 A.2d 1068, 1070 (1988). Such benefit and detriment, however, are only loosely defined. Detriment to the promisee is sufficient in the legal sense if at the request of the promisor and upon the strength of that promise, the promisee performs any act which causes the promisee the slightest trouble or inconvenience, and which the promisee is not otherwise obliged to perform. Williston, *supra*, § 102A at 380. Moreover, the Pennsylvania courts have long held that the adequacy of consideration is not a factor to be considered in determining the validity and enforceability of a contract. *Washowich v. McKeesport Municipal Water Authority*, 94 Pa.Commw. 509, 515, 503 A.2d 1084, 1087 (1986); *Kelly by Kelly v. Ickes*, 427 Pa.Super. 542, 629 A.2d 1002 (1993); *Da-*

*har v. Grzandziel,* 410 Pa.Super. 85, 599 A.2d 217 (1991).

Here, Cook promised to purchase Groff's existing loans from Hamilton Bank in exchange for an additional security interest in the five Adelvision Units. Stipulation, ¶ 19, 27, Stip. Exhibit "D". Analyzing this transaction, it is clear that both Cook and Groff suffered a detriment as promisees. Groff obviously acted to his detriment in granting Cook rights in his ownership of the five Adelvision Units in exchange for Cook's promise to purchase the Hamilton loans.

On the other side of the transaction, Cook has acted to his detriment by obligating himself to purchase Groff's loans with Hamilton bank. Prior to Cook's agreement with Groff, he was under no legal obligation to purchase these loans and relinquish $1,050,000.00 in cash. Therefore, Cook suffered a legal detriment by performing an act which he was not otherwise obliged to perform. *See Hillcrest Foundation, Inc. v. McFeaters,* 332 Pa. 497, 503–04, 2 A.2d 775, 778 (1938).

■ Defendant United States argues that Cook suffered no detriment by his promise to purchase the loans from Hamilton Bank because the face value of the notes at the time of purchase was $2,670,885.00, yet Cook only paid $1,050,000.00 for the notes. The United States points out that Cook also obtained from Hamilton the security rights that Groff formerly pledged to Hamilton. The United States concludes from these facts that Cook stood to reap a large profit from this transaction even without the addition of the five Adelvision Units, and, therefore, could not possibly be said to have suffered a detriment. This argument flies in the face of a basic tenet of contract law. As Professor Williston succinctly said: "It is an 'elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration.' This rule is almost as old as the law of consideration itself." Williston, *supra,* § 115 (quotations omitted). The Pennsylvania Supreme Court affirmed this principal in *York Metal & Alloys Co. v. Cyclops Steel Co.:* " 'There is a consideration if the promisee, in return for the promise, does anything legal

which he is not bound to do, or refrains from doing anything which he has a right to do, *whether there is any actual loss or detriment to him or actual benefit to the promisor or not.'* " 280 Pa. 585, 589, 124 A. 752, 754 (1924) (quotations omitted and emphasis added). Simply because the defendant United States believes that Mr. Cook will reap a profit from the contested transaction does not eradicate the existence of consideration arising from Cook's obligation to purchase the Hamilton loans.[6]

■ We must also reject the United States' argument that Cook's purchase of the Hamilton loans represented a separate and unrelated transaction to the Groff Agreement and Security Agreement at issue here. It is clear from the stipulated facts that Cook entered into the Groff Agreement and Security Agreement on November 12, 1991, and a day later Cook transferred by wire the sum of $1,050,000.00 to Hamilton Bank in exchange for the conveyance of Groff's loans with the bank. Stipulation, ¶ 19–21; Stip. Exhibits "D", "E", and "F". Moreover, the parties have stipulated that the additional security of the five Adelvision Units accorded Cook reasonable prospects of recovering his investment in the Hamilton loans. Stipulation, ¶ 27. We can only conclude from this series of events and the parties' own stipulation, that the Groff Agreement and Security Agreement induced Cook's action in purchasing Groff's loans with Hamilton Bank.

■ Finally, the United States argues that no benefit accrued to Groff as promisor in the granting of the security interest in the five Adelvision Units to Cook and, therefore, the transaction lacked valid consideration. While it is true that there was no agreement between the parties that Cook would forbear from collection of the purchased Hamilton loans, the court need not inquire as to the benefit received by the promisor in order to find valid consideration. The Pennsylvania Supreme Court has spoken directly on this issue, stating:

There may be a consideration without the accrual of any benefit at all to the promisor. If the promisee has suffered any

6. The United States makes no claims of fraud of any type in this matter.

detriment however slight, or though he has suffered no real detriment, if he has done what he was not otherwise bound to do, in return for the promise, he has given a consideration and the court will not ask whether the promisor was benefitted.

*Hillcrest Foundation, Inc. v. McFeaters,* 332 Pa. at 504, 2 A.2d at 778 (quotations omitted). Accordingly, since we find that Cook suffered a legal detriment in this transaction, we do not have to explore the kind of benefit gained by Groff in this bargained for exchange.[7]

In short, we conclude that the disadvantage suffered by Cook was sufficient consideration for the promise by Groff to grant Cook rights to the limited partnership units in Adelvision. Consequently, Cook's security interest was protected under Pennsylvania law against subsequent judgment lien creditors, as required by 26 U.S.C. § 6323(h)(1)(A).

## B. Did Cook "Part with Money or Money's Worth"?

■■■ The "money or money's worth" requirement in 26 U.S.C. § 6323(h)(1)(B) is to be determined by federal law. *United States v. 3809 Crain Limited Partnership,* 884 F.2d 138, 142 (4th Cir.1989). Section 6323(h) provides that a security interest exists for priority purposes when the party's asserted interest has been perfected under local law *and* "to the extent that ... the holder [of the purported security interest] has parted with money or money's worth." The relevant regulation defines "money or money's worth" as:

money, a security ..., tangible or intangible property, services, and other consideration reducible to a money value.... [A]ny other consideration not reducible to

a money value [is not] consideration in money or money's worth.

26 C.F.R. § 301.6323(h)–1(a)(3) (1993).[8]

■■■ In this case, Cook parted with $1,050,000.00, which was transferred to Hamilton Bank. Cook agreed to purchase Groff's loans with the bank for that amount in exchange for Groff's transfer of security rights in limited partnership units of Adelvision. Thus, Cook surrendered something of value at the time he took the security interest in the five Adelvision Units.

■■■ The fact that Cook transferred money to a third party, Hamilton Bank, rather than directly to Groff, does not invalidate the security interest. Section 6323(h) and the accompanying Treasury regulation do not require that "money or money's worth" be paid directly to the debtor or the person who has conveyed the security interest. 26 U.S.C. § 6323(h)(1)(B); 26 C.F.R. § 301.6323(h)–1(a)(3). The statute only requires that the holder of the security interest has in fact parted with "money or money's worth."

The United States argues that Cook's promise to Groff to purchase loans from Hamilton Bank is not reducible to "money or money's worth," because the $1,050,000.00 that Cook paid to Hamilton Bank was in reciprocation for the notes and securities held by Hamilton Bank, and not for the five Adelvision Units. In support of its argument, the United States relies on the Fourth Circuit's reasoning in *United States v. 3809 Crain Limited Partnership,* 884 F.2d at 138. We find the United States' reliance on *Crain* to be inapposite in this case.

7. While we do not have to find that a benefit accrued to Groff out of this transaction, we note that the loans purchased by Cook from Hamilton Bank are presently in default and have been in default since the loans were purchased. Stipulation, ¶ 26. Despite this fact, Cook has not yet pressed for payment nor has initiated foreclosure proceedings against Groff. Stipulation, ¶ 27. Even though there is no express provision in the Agreement and Security Agreement between Groff and Cook providing for a forbearance from loan repayment, it appears that Groff apparently had reason to believe that the new creditor Cook would be more patient than Hamilton Bank with respect to loan repayment. This belief would be

reasonable in light of Groff's knowledge that Cook had a business interest in Groff's companies and would hold the additional security of the Adelphia Units.

8. Treasury regulations have the effect of law. *See Cottage Savings Ass'n v. Commissioner,* 499 U.S. 554, 559, 111 S.Ct. 1503, 1508, 113 L.Ed.2d 589 (1991) (Treasury regulations and interpretations continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received Congressional approval and have the effect of law.)

The court in *Crain* explicitly recognized that § 6323 does not require that "money or money's worth" be given directly to the party conveying the security interest. *Id.* at 143. Rather, the court held only that the parties show more than a circumstantial connection between the parting of "money or money's worth" and the granting of the security interest. *Id.* Specifically, the court reasoned:

> Although the statute does not expressly require that the holder of the purported security interest part with money or money's worth *in exchange for* the security interest, we are convinced that the separate acts—the act allegedly constituting the past consideration and the act granting the "security interest"—must be more than circumstantially related. The applicable regulations discuss "money or money's worth" in terms of "consideration," indicating that, as generally true in contract law, the reciprocating performance must be made in consideration of, i.e., in a bargained exchange for, the former act.

*Id.* (emphasis in original).

In *Crain*, two individuals were involved in a check-kiting scheme which caused a bank to part with, and lose, over $3,000,000.00 in covering kited checks. Later, when the scheme was uncovered, the perpetrators extended a security interest in real property to the bank in exchange for the bank's promises not to prosecute and to seek repayment first from another party to the check-kiting scheme. The court found that in substance, the security interest was granted in return for the bank's forbearance on the $3,000,-000.00. Nevertheless, the court concluded that the parting with "money or money's worth" and the conveyance of the security interest were really two separate unrelated transactions, and the connection between the two was merely circumstantial. *Id.* at 143–44.

The situation in *Crain* is in sharp contrast to the instant case. Here, Cook's parting with $1,050,000.00 and Groff's conveyance of the Security Agreement to Cook were part and parcel of the same basic transaction which involved mutual obligations between the two parties, and which was entered into or performed at the same time. As explained earlier in this opinion, we must reject the argument that Cook's purchase of Groff's loans with Hamilton Bank in exchange for the conveyance of a security interest in the five Adelvision Units was anything other than a contemporaneous exchange. As noted in footnote five, the parties expressly agreed that Cook would receive "the collateral and benefits specified in this Agreement in return for Mr. Cook acquiring the Hamilton Loan Documents." *See* Stip. Exhibit "D" at 1; *see also* Stipulated Fact, ¶ 19.

Finally, the money value of Cook's Agreement with Groff is clearly evidenced by the language of the Agreement itself as well as the subsequent payment by Cook to Hamilton Bank. *See* Stip. Exhibit "D". Cook promised to purchase Groff's loans with Hamilton Bank for the sum of $1,050,000.00 and Groff agreed to convey to Cook a security interest in the five Adelvision Units. *See e.g., Trinity Holdings v. Firestone Bank,* 1994 WL 449258, at *9, 1994 U.S.Dist. LEXIS 6538, at *23–24 (W.D. Pa., May 4, 1994) (Bank had parted with "money or money's worth" within meaning of Tax Code and Treasury regulation definition when it agreed to forbear loans in exchange for assignment of mortgage note and non-compete agreement for purposes of determining priority under Internal Revenue Code); *see also Cipriano v. Tocco,* 772 F.Supp. 344 (E.D.Mich. 1991) (Release by creditor of mortgage in exchange for assignment of purchaser's interest in land contract constituted valid consideration for purposes of Section 6323 of the Internal Revenue Code and took priority over a federal tax lien).

■ In summary, we find that Cook was the holder of a security interest, as defined in 26 U.S.C. § 6323(h)(1), at the time the IRS filed its Notices of Tax Liens against Groff, with the exception of the federal tax lien in the amount of $194,404.03 which was filed on October 21, 1991.[9] For this reason and pur-

---

9. As a result of our finding, it is unnecessary for the court to determine whether Cook qualified as a "purchaser" entitled to priority over the IRS liens under § 6323(a). However, in this respect, the court notes that the term "purchaser," as defined in § 6323(h)(6), specifically excludes

suant to 26 U.S.C. § 6323(a), Cook's security interest with respect to Groff's ownership of five units in Adelvision is entitled to priority over all IRS liens filed subsequent to the perfection of Cook's security interest, which occurred at the latest on December 9, 1991 with the filing of Financing Statements at the Department of State of the Commonwealth of Pennsylvania. *See* Stipulation, ¶ 22.

## IV. CONCLUSION

Upon consideration of the parties' Cross Motions for Summary Judgment and for the reasons set forth above, summary judgment will be granted in favor of Defendants Groff and Cook. We will direct the clerk of court to pay $194,404.03 of the interpleaded fund to Defendant United States and to remit the remainder of the fund to Defendant Cook.

An appropriate order follows.

### *ORDER*

#### July 25, 1994

AND NOW, this 25th day of July, 1994, in accordance with the accompanying Opinion, **IT IS ORDERED** as follows:

1. the Motion of Defendants, Horace E. Groff and David R. Cook, for Summary Judgment, filed on May 13, 1994, with respect to priority to the interpleaded fund of liquidated units in Adelvision, L.P. is hereby **GRANTED;**

2. the Motion of Defendant United States for Summary Judgment, also filed on May 13, 1994, with respect to priority to the interpleaded fund of liquidated units in Adelvision, L.P. is hereby **DENIED;**

3. the Court acknowledges the voluntary Notice of Dismissal of the Defendant Department of Labor and Industry of the Commonwealth of Pennsylvania, filed on December 16, 1993, and hereby **ORDERS** same Defendant **DISMISSED** without prejudice from this action pursuant to Fed.R.Civ.P. 41(a)(2);

4. the Clerk of Court shall pay $194,-404.03 of the interpleaded fund to the Defendant United States and shall pay the remainder of the fund to Defendant David R. Cook.

**THIS CASE IS CLOSED.**

### *ORDER OF AMENDMENT*

#### August 4, 1994

AND NOW, this 4th day of August 1994, the court hereby amends its Order issued on July 25, 1994, and **FURTHER ORDERS** that within fourteen (14) days of the date of this Order, the law firm of Buchanan Ingersoll, P.C. and Fulton Bank shall disperse the interpleaded fund of Horace E. Groff's liquidated Adelvision units pursuant to the terms of this Court's July 25, 1994 Order, remitting $194,404.03 to the Defendant United States Department of Treasury and paying the remainder of the fund to Defendant David R. Cook.

### *ORDER ON MOTION TO ALTER OR AMEND JUDGMENT*

#### August 11, 1994

■ AND NOW, this 11th day of August 1994, upon consideration of Defendant United States' Motion to Alter or Amend Judgment, and the memorandum and exhibits submitted in support thereof, filed on August 9, 1994, **IT IS ORDERED** that said Motion is hereby **GRANTED.**[1] **IT IS FURTHER**

---

those who otherwise qualify as the holder of a security interest. *See* 26 U.S.C. § 6323(h)(6).

In addition, because we find Cook's security interest to be valid as against the interpleaded fund, we reject Groff's claims on the fund as owner of the proceeds.

1. The court now grants Defendant United States' Motion to Amend or Alter Judgment due to the fact that our prior Orders of July 25, 1994 and August 4, 1994 did not provide for accrued statutory interest on the undisputed tax lien in the amount of $194,404.03, which was given priority over Mr. Cook's perfected security interest in the Adelvision units. By statute, interest accrues on

the assessed liability from the date of assessment until the liability is paid. 26 U.S.C. § 6321. Section 6321 of the Internal Revenue Code provides that if a person is liable for any tax assessment, the amount of the tax, "including any interest, additional amount, addition to tax, or assessable penalty . . .", shall be a lien in favor of the United States upon all property and rights to property belonging to the taxpayer. This lien becomes effective with respect to third parties when it is properly filed pursuant to 26 U.S.C. § 6323(f). *See* 26 U.S.C. § 6323(a). In this case, defendant Cook has admitted that the United States' lien at issue was properly filed on

**ORDERED** that the Amended Order issued by this Court on or about August 4, 1994 shall be amended to read in relevant part:

within fourteen (14) days of the date of this Order, the law firm of Buchanan Ingersoll, P.C. and Fulton Bank shall disperse the interpleaded fund of Horace E. Groff's liquidated Adelvision units pursuant to the terms of this Court's July 25, 1994 Order, remitting $194,404.03, *plus statutory interest that accrues until the imposed liability is paid,* to the Defendant United States Department of Treasury and paying the remainder of the fund to Defendant David R. Cook.

October 21, 1991. The court would have provided for such statutory interest initially if the United States had made clear in its pleadings and memoranda that the alleged tax liens due did not include statutory additions. Therefore, this court's prior Orders must now be amended to include interest on the principal amount of $194,404.03 due from the date of assessment.