**M. Lorene PYLE, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1999.

Decided May 26, 1999.

---

John R. O'Rourke, Jr., Norristown, for petitioner.

Andrew A. Coates, Philadelphia, for respondent.

Before FRIEDMAN, J.,
LEADBETTER, J., and MIRARCHI, Jr.,
Senior Judge.

MIRARCHI, Jr., Senior Judge.

H. Lorene Pyle, petitions this Court to review a final administrative order of the Pennsylvania Department of Public Welfare (DPW) affirming a hearing officer's decision to deny her appeal of a decision of the County Assistance Office (CAO). The CAO denied Pyle's application for medical assistance (MA) benefits because available assets had been transferred for less than fair consideration. We affirm.

The essential facts are undisputed. Pyle, who is over 90 years of age, has been a resident of the Connor/Williams Nursing Home since June 27, 1996. On September 3, 1996, Pyle transferred her house in Folsom, Pennsylvania to her daughter, Carol Jane Morrall, for the sum of $1. On March 25, 1997 Morrall transferred the same property back to Pyle for the sum of $1. On June 25, 1997, an irrevocable trust agreement was entered into by and between Harold N. Fliegelman, Esquire, as grantor, and Morrall, as trustee (Fliegelman/Morrall Trust). There is no evidence in the record, however, that any assets were transferred by the grantor to the trust. On the day the trust was created, however, Pyle transferred $61,000 to the Fliegelman/Morrall Trust in exchange for a non-negotiable promissory note in that amount. Also, on June 25, 1997, Pyle, through her attorney-in-fact, Morrall, transferred the house located in Folsom, Pennsylvania to the Fliegelman/Morrall Trust. In exchange for the transfer, Pyle received another non-negotiable promissory note from the Trust in the amount of $80,000.

The two promissory notes provide for similar terms. Each note provides for an alleged return of 8% interest, plus an additional 2% "premium" in consideration of the fact that the notes will cancel in the event of Pyle's death, absolving the borrower (i.e., the Fliegelman/Morrall Trust) from making any further payment. The promissory note in exchange for the transfer of $61,000 provides for monthly payments in the amount of $101.67 for 47 months. A balloon payment is due and owing on the 48th month of the loan, July 1, 2001, in the amount of $61,000, together with any accrued interest or "premium." The $80,000 promissory note, that was issued in exchange for Pyle's house, pro-

vides for monthly payments in the amount of $133.34 for 47 months. On the 48th month of the note, July 1, 2001, a balloon payment of $80,000 is due and payable, together with any accrued interest or "premium."

Pyle alleges that the maturity date of July 1, 2001 precedes her anticipated death of July 2002 according to DPW's nursing care handbook. Of course, in the event Pyle dies before the maturity date no further payment is due, and all remaining sums become the property of the Fliegelman/Morrall Trust. The trust agreement then provides that Morrall is the residuary beneficiary of any payments made to the trust following Pyle's death. The trust agreement further provides that the trustee (Morrall) may make gifts from the trust estate to whomsoever she desires (except the grantor or a creditor of the trust) in her sole and absolute discretion; that the trustee may make loans at whatever terms she may desire, except that she may not make loans to the grantor or his estate or his wife's estate or to the estate of any beneficiary of any trust fund created under the agreement; and that the trustee is authorized to purchase assets of the grantor's estate and assets of the estate of any deceased member of the grantor's immediate family at fair market value.

On August 14, 1997, Pyle applied for MA with the CAO. The application was completed by Morrall, as Pyle's attorney-in-fact, on September 19, 1997. The CAO denied Pyle's application on November 5, 1997. Pyle appealed, and a hearing was held before a hearing officer on February 17, 1998.

DPW presented the testimony of the income maintenance worker who reviewed and made the decision to reject Pyle's MA application. This witness described the reasons that the application was rejected. Pyle presented no witnesses. The hearing officer determined Pyle failed to rebut DPW's presumption that the funds were transferred to the Fliegelman/Morrall Trust for less than fair market value and not for an exclusive purpose other than to qualify for MA. Accordingly, the hearing officer denied Pyle's appeal. The Bureau of Hearings and Appeals affirmed the hearing officer, and this petition for review followed.

 This court's scope of review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated. *Oriolo v. Department of Public Welfare*, 705 A.2d 519 (Pa.Cmwlth.1998). Pyle argues several issues on appeal; (1) whether Pyle received fair market value in exchange for the "loans" she made on June 25, 1997; (2) whether the hearing officer erred by failing to specify the reasons for her decision and by failing to identify supporting evidence; (3) whether the hearing officer erred by "applying an inapplicable section of the law"; (4) whether the hearing officer erred by failing to make a factual determination of whether Pyle received fair market value in exchange for the "loans"; and (5) whether the hearing officer attempted to apply an MA eligibility standard more restrictive then that permitted by federal law.

In *Ptashkin v. Department of Public Welfare*, 731 A.2d 238 (Pa.Cmwlth.1999), we reviewed virtually the identical issues raised herein arising from a very similar factual scenario.[1] In *Ptashkin*, two adult children of the institutionalized applicant executed promissory notes payable to the applicant in return for the net proceeds from the sale of the applicant's house. The terms of the notes were identical to the terms of the notes in this case (except for the face amount of the notes and the amount of the stated monthly payments).

---

1. The only issue raised herein that was not addressed in *Ptashkin* is the case-specific issue of whether the hearing officer failed to specify the reasons for her decision and identify supporting evidence for that position.

That is, each note provided for 8% interest with a 2% "premium" in consideration for a self-canceling clause that absolved the borrower from making any further payments due upon the death of the "lender" (the MA applicant, then institutionalized and of advanced age).[2]

In *Ptashkin*, the applicant argued that the terms of the notes demonstrated that a fair market exchange had occurred, that the hearing officer incorrectly applied DPW's regulations by permitting DPW to enjoy a presumption that assets were transferred for less than fair market value and for the purpose of qualifying the applicant for MA without first proving this, and that the hearing officer erred by applying an eligibility standard more restrictive than that allowed by federal law. We explained in *Ptashkin* that under statute, regulation, and case law, the MA applicant fully bears the burden of proving eligibility, including proof that transfers made during the regulatory look-back period[3] were made for fair market value or other valuable consideration, or exclusively for a purpose other than to qualify for MA. We also determined that under DPW regulations, DPW may make the presumption that assets were transferred for less than fair market value or for the purpose of qualifying for MA. The regulations then provide that the burden falls upon the applicant to rebut this presumption either at a pre-hearing conference or at a hearing. Finally, we rejected the applicant's argument that DPW applied a stricter eligibility standard than that permitted under federal Medicaid law.

We held in *Ptashkin* that the applicant, who presented no evidence on her own behalf, failed to sustain her burden of proving eligibility by demonstrating that the transfer of available assets was made for fair market value or for the exclusive purpose of not qualifying for MA. We further noted that DPW explained at the hearing the basis for why it presumed that the assets were transferred for less than fair market value and to qualify the applicant for MA, but that the applicant, not presenting any evidence, failed to rebut that presumption. Finally, we rejected the argument that the promissory notes on their face established that the transfer of assets had been made for fair market value.

Here, we are faced with the near-identical situation. DPW made the presumption that the transfer of assets from Pyle to the Fliegelman/Morrall Trust was made for less than fair market value and was also made for the purpose of qualifying Pyle for MA. At the hearing, DPW presented testimony concerning why DPW made this presumption. In response, Pyle presented absolutely no evidence. Instead, as with the applicant in *Ptashkin*, she incorrectly argues that the burden lies with DPW to prove a transfer for less than fair market value and that the promissory notes on their face establish that the transfer of assets was made for fair consideration.

We cannot agree with Pyle that the promissory notes alone demonstrate that a fair market exchange had occurred for the reasons we stated in *Ptashkin* regarding the notes at issue in that case. First, the notes are allegedly drafted so that they will be paid off prior to Pyle's "actuarial" date of death in purported accordance with DPW regulations. Pyle failed to present any evidence regarding her actual physical condition, however, which necessarily affects any consideration of life expectancy.[4]

---

**2.** The attorney for the applicant herein (and the grantor of the Fliegelman/Morrall Trust) was the attorney for the applicant in *Ptashkin*.

**3.** 55 Pa.Code Section 178.104(c) provides that DPW may examine any transfer of assets made by the applicant within 36 months from the date on which the applicant is first institutionalized and has applied for MA.

**4.** Indeed, even DPW's regulations regarding annuities that Pyle relies upon, states that acceptable annuities must provide for a return that "corresponds with a reasonable estimate of the life expectancy of the beneficia-

Second, even if Pyle were to survive to the term of the loans, these "loans" do not in the slightest resemble a fair market transaction as defined by DPW's regulations. Fair market value is defined as "[t]he price which property can be expected to sell for on the open market or would have been expected to sell for on the open market in the geographic area in which the property is located." 55 Pa.Code § 178.2. Here, Pyle is purportedly investing, in total, $141,000 to receive a monthly return of approximately $235 per month for four years until she receives the principal, plus accrued interest, in a lump sum just prior to her actuarially expected date of death. Of course, if she dies before the term of the loans, she has divested herself of a large amount of money for such a comparatively slight amount of monthly income that it is inconceivable how it would provide her any material benefit.

To further illustrate the absurdity of characterizing this transaction as a fair market exchange, it must be observed that the total monthly return of $235 is only a fraction of the stated interest rate of 8%, allowing for the possibility that the extra 2% premium is to be paid at the term of the loan. An 8% return on the $61,000 loan would yield a monthly interest payment of $406.67; a 10% return would yield a monthly interest payment of $508.33. Pyle is receiving $101.67 per month on this loan. An 8% return on the $80,000 loan would yield a monthly interest payment of $533.33; a 10% return would yield a monthly interest payment of $666.67. Pyle is receiving $133.34 per month on this loan. Thus, Pyle is surrendering her principal for four years on unsecured loans for a sizable amount of money and is receiving what amounts to a 2% monthly interest payment in return.

 In sum, this does not appear to be a "good deal," as Pyle argues; it appears to be an absurd deal. On the face of these transactions, it is not apparent how Pyle will receive any real benefit or consideration from the transfer (aside from the solace of transferring assets to her adult child, which is not of itself a protected transaction under the Medicaid law).[5] At any rate, it is Pyle's burden to show that this transaction was for fair consideration or not for the purpose of qualifying for MA. The terms of the notes by themselves do not satisfy this burden.

With respect to the issue of whether the hearing officer failed to specify the reasons for her decision and identify supporting evidence, our review indicates that the hearing officer quite adequately stated the reasons for affirming the denial of Pyle's MA application. The hearing officer fully discussed the facts that were presented before her, which facts included the stated reasons for DPW's presumption that the "loans" were made for less than fair market value and for a purpose to qualify for MA, and the stipulated terms of the promissory notes and the Fliegelman/Morrall Trust Agreement themselves. If the hearing officer failed to make other relevant findings of fact, the fault lies squarely with Pyle who failed to shoulder her burden of coming forward with necessary factual evidence to support her claim of eligibility for MA.

Accordingly, DPW's final administrative order must be affirmed.

---

ry." *State Medicaid Manual*, Health Care Financing Agency, Pub. 45–3, Transmittal No. 64 (Nov.1994), Section 3258.9B. A "reasonable estimate" of life expectancy would necessarily be based upon an individual's actual circumstances, not a generalized figure based on an abstraction.

5. Under contract law, consideration must be sufficient to support the existence of a contract. *Kelly by Kelly v. Ickes*, 427 Pa.Super.

542, 629 A.2d 1002 (1993). Consideration is sufficient when it "confers a benefit upon the promisor or a detriment upon the promisee; a 'bargained for exchange.' " *Id.*, 629 A.2d at 1007, n. 3. Here, it appears doubtful that sufficient consideration exists to support the transaction. It is difficult to see how Pyle receives any benefit from this arrangement or the Fliegelman/Morrall Trust any practical detriment.

## ORDER

AND NOW, this 26th day of May, 1999, the order of the Pennsylvania Department of Public Welfare in the above-captioned matter is hereby affirmed.