Argued April 5, reversed and remanded June 28, 1977

WHITLOCK, *Appellant,*
*v.*
HOGREFE, *Defendant,*
and
FALL RIVER MANUFACTURING, INC.,
*Respondent.*
(TC 74-2671, SC 24527)

565 P2d 1092

Howard E. Speer, P.C., Eugene, argued the cause and filed briefs for appellant.

Jack B. Lively of Lively & Wiswall, Springfield, argued the cause and filed a brief for respondent.

LINDE, J.

## LINDE, J.

Plaintiff, as personal representative of the estate of her mother, Helen Hogrefe, sued Ralph Hogrefe, Sr., and Fall River Manufacturing, Inc., doing business as Douglas Fir Lumber Company, for damages from the conversion of logs removed by Ralph Hogrefe from land belonging to the estate and sold by him to the company. The company pleaded defenses of equitable estoppel and actual or apparent authority on the part of Ralph Hogrefe. Hogrefe himself made no appearance and a default judgment was entered against him. However, the trial court decided in favor of defendant company, without specifying on which ground, and plaintiff appeals. On review of the record, we conclude that defendant did not show actual authority in Ralph Hogrefe to make the sales, nor that it relied on any apparent authority on his part, and that it has not proved the elements necessary for equitable estoppel. We reverse.

It is undisputed that in December, 1971, Helen Hogrefe contracted to sell all the timber on a 100-acre tract that she owned to Lane Plywood, Inc., at a price of $100 per thousand board feet for Douglas fir logs and $75 per thousand board feet for Hemlock, delivered to Lane Plywood's plants. Her husband, Ralph Hogrefe, who was to do the falling, bucking, yarding, and hauling, also signed the contract, although he had no ownership interest.

On October 20, 1972, Mrs. Hogrefe died intestate. Mrs. Hogrefe's children by a former marriage brought an action challenging Ralph Hogrefe's right to inherit from the estate under ORS 112.455 to 112.555. Before that case came to trial, the estate and Hogrefe reached a settlement whereby he would not inherit from the estate but could perform as an independent contractor the services called for under the Lane Plywood contract, keeping fifty per cent of the proceeds and assuming certain costs. In addition he received approximately $7,000 from the estate.

On December 17, 1973, the estate sold the property to Davidson Industries, Inc., reserving the timber to fulfill the Lane Plywood contract and the right to enter the property to remove the timber. From about this time, Hogrefe began selling some of the logs from this property as his own logs to defendant Douglas Fir, until he was found out in May, 1974. Upon the discovery of Hogrefe's conversion of its logs,[1] the estate demanded payment from Douglas Fir of the fair market value of the logs the company had bought from Hogrefe and, upon the company's refusal, brought the present action.

■ Although defendant Douglas Fir generally denied plaintiff's allegation, the evidence is undisputed that between December, 1973 and May, 1974 Hogrefe frequently took logs that he should have delivered to Lane Plywood, Inc., to Douglas Fir Company instead, and that he sold and Douglas Fir bought them as his logs. Defendant does not deny on this appeal that it purchased logs that had been converted by Hogrefe and that a purchaser of converted property has no title better than that of the seller, *cf.* ORS 72.4030, and is liable to the owner for the property or its value. Nor does defendant strongly urge that Ralph Hogrefe had any actual authority to sell these or any other logs belonging to the estate, and the evidence is plain that his authority was limited to the performance of the functions described earlier. As for the affirmative defense that Hogrefe had apparent authority from the estate to sell, the evidence is equally clear that Douglas Fir did not act on any such assumption when it bought the logs. Defendant's vice president and general manager testified that the company buys much of its log supply as it becomes available in the open market; that he did not know Ralph Hogrefe by that or any other name when he first agreed to buy logs from him in November, 1973; that during the following weeks Hogrefe occasionally brought in one

---

[1] Ralph Hogrefe was tried for the theft and convicted after absconding during the trial.

or two loads of logs early in the morning, which the buyers thought a tactic to avoid being caught with a greatly overloaded truck; that Hogrefe generally picked up his checks at Douglas Fir's office instead of having them mailed; and that the company did not question whose logs Hogrefe was selling until the transactions ended in May, 1974, when it first received notice of Hogrefe's misappropriation of the logs. There is no testimony that Hogrefe asserted or that anyone at Douglas Fir believed he was selling the logs for the estate.

■ There remains a claim that plaintiff should be estopped from denying Ralph Hogrefe's authority to sell the estate's logs to defendant Douglas Fir because Hogrefe, in performing the logging and transporting under his settlement with the estate, was allowed to brand the logs "RH". As for the statutory presumption of ownership that arises from a registered brand, ORS 532.040, the "RH" brand had been abandoned for non-renewal, ORS 532.100. Apart from the statutory presumption, defendant's witness did not testify that Douglas Fir relied on the brand as evidence of Hogrefe's ownership. In short, the elements of equitable estoppel—action by an innocent party in reliance on the other's false representation, made with knowledge of the facts and intended to be acted upon, see *Earls v. Clarke,* 223 Or 527, 530, 355 P2d 213 (1960) and cases cited—are not made out in this case.

■ Finally, defendant cites two of this court's past opinions to support a general equitable claim that, vis-a-vis an innocent third party, even negligence on the part of the plaintiff in allowing a wrongdoer to dispose of plaintiff's property may equitably prevent him from recovering his loss from the third party. In *Vanderpool v. Burkitt,* 113 Or 656, 234 P 289 (1925), the seller of a truck had given the buyer back his note, marked "Paid," although it had taken a new note from the buyer in lieu thereof. The canceled note made it possible for the buyer fraudulently to borrow money on the truck from a third party. What the court held to

protect the third party against the assignee of the original creditor was that this creditor had given its buyer the truck and the documents of apparent ownership, which were relied on by the subsequent lender. Similarly, *So. Seattle Auto Auction, Inc. v. Ladd,* 230 Or 350, 370 P2d 630 (1962), which reviews other cases on unauthorized sales of automobiles, distinguished situations where an owner has given the misappropriating seller documents implying his ownership from others in which he is merely in possession, and that decision actually held against a claim of estoppel. The plaintiff estate in the present case did not give Ralph Hogrefe any similar evidence of ownership of the logs he converted, beyond the mere authority to fall, prepare, and deliver them to the correct purchaser.

With the failure of the equitable defenses, the case must be returned to the circuit court for disposition of plaintiff's action at law.

Reversed and remanded.