652 A.2d 343

**UNDERHILL COAL MINING COMPANY, Appellant,**

v.

**George Alfred HIXON, Ronald Rishel and
Rodney VanVoorhis.  (Three Cases)**

**Appeal of Ronald RISHEL and Rodney VanVoorhis.**

Superior Court of Pennsylvania.

Argued Jan. 6, 1994.

Filed Dec. 22, 1994.

Carl A. Belin, Jr., Clearfield, for Underhill.

Toni M. Cherry, Dubois, for VanVoorhis.

Vernon D. Roof, Ridgway, for Rishel.

Before BECK, JOHNSON and MONTGOMERY, JJ.

BECK, Judge:

This appeal raises the issue of whether in a trespass and conversion action a good faith defense is available to bona fide purchasers for value who purchased cut timber from a third party who had converted the timber.

The trial court answered this question in the affirmative, and granted summary judgment to the bona fide purchasers for value. We reverse.

The bona fide purchasers for value are Ronald Rishel and Rodney VanVoorhis. Underhill Coal Mining Company ("Underhill"), the owner of the timbered property, brought an action in trespass and conversion against the purchasers as

well as the alleged converter, George Hixon. Underhill alleged that Hixon unlawfully and without permission entered on its property and cut and removed a substantial quantity of timber. Underhill further alleged that Hixon sold at least some of this timber to defendants Rishel and VanVoorhis. Underhill sought recovery of damages for the loss of the value of the unlawfully removed timber and for certain other expenses incurred in connection therewith.

After a period of discovery, Rishel and VanVoorhis filed motions for summary judgment alleging that the pleadings, affidavits and depositions of record established that there was no genuine dispute as to whether Rishel and VanVoorhis acted in good faith and without knowledge that the timber they were purchasing had been unlawfully obtained by Hixon. This, they alleged, provided them with a complete defense as a matter of law. VanVoorhis also asserted that the fact that Underhill had a right to secure an immediate judgment against Hixon, who had admitted to the conversion, barred Underhill from proceeding against Rishel and VanVoorhis.[1]

The trial court entered summary judgment for Rishel and VanVoorhis. In its opinions in support of this ruling,[2] the trial court recognized that under the common law doctrine of conversion a good faith purchaser of converted goods is guilty of conversion himself. However, the court concluded that this principle is in conflict with section 2403 of the Uniform Commercial Code, which states in pertinent part:

(a) Transfer of title.—A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voida-

1. Shortly after the entry of summary judgment from which this appeal is taken, Underhill and Hixon entered into a stipulation and agreed to the entry of judgment against Hixon. The judgment was duly entered by the trial court on June 16, 1993.

2. Although the court states in the prefatory section of its opinions that its orders granted demurrers in favor of Rishel and VanVoorhis, the orders themselves state that summary judgment is granted in favor of these parties. We will analyze this matter in accordance with the actual text of the orders on appeal.

ble title has power to transfer a good title to a good faith purchaser for value. . . .·

(b) Transfer by merchant entrusted with possession of goods.—Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business.

(c) Definition of "entrusting".—"Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the disposition of the goods by the possessor has been such as to be larcenous under the criminal law.

The trial court found that a liberal construction of these subsections of the U.C.C. mandated entry of summary judgment for Rishel and VanVoorhis. First, the court concluded that Hixon had voidable title to the timber and could, therefore, deliver good title to Rishel and VanVoorhis. Second, the court found Hixon was a merchant to whom Underhill had entrusted the timber and that the entrustment enabled Hixon to deliver good title to Rishel and VanVoorhis as buyers in the ordinary course of business. Lastly, the trial court relied on *Linwood Harvestore, Inc. v. Cannon,* 427 Pa. 434, 235 A.2d 377 (1967), to hold that since Underhill had exercised its option to seek a judgment against Hixon, the original convertor, it was precluded as a matter of law from also seeking a judgment against Rishel and VanVoorhis.

Underhill filed a timely appeal from the orders granting summary judgment for Rishel and VanVoorhis. Rishel and VanVoorhis filed cross-appeals challenging a later ruling by the trial court permitting Underhill to supplement the record by filing a portion of the transcript of a second deposition of Hixon.

We have concluded that the entry of summary judgment in this case was error as a matter of law and that none of the trial court's reasons for granting summary judgment is valid. Because we have so concluded, and therefore must remand the

case for further proceedings, we need not resolve the issue raised by appellees' cross-appeal, namely, whether the trial court also erred in allowing Underhill to supplement the record after summary judgment had been granted. This issue has been rendered moot as a result of our decision that the entry of summary judgment in this case was error regardless of whether the record is deemed to include or exclude Underhill's supplement to the record.

Our standard of review in an appeal from an order granting summary judgment is clear.

Our standard of review mirrors that of the trial court. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa. R.C.P. 1035(b). In ruling upon a motion for summary judgment, a court must examine the record in the light most favorable to the non-moving party and any doubts are to be resolved against the moving party. *Kryeski v. Schott Glass Technologies,* 426 Pa.Super. 105, 626 A.2d 595 (1993).

*Oatess v. Norris,* 431 Pa.Super. 599, 637 A.2d 627, 629 (1994).

The classic definition of conversion under Pennsylvania law is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721, 726 (1964); *Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 524 A.2d 896 (1987), *allo. denied,* 516 Pa. 625, 532 A.2d 436 (1987). Although the exercise of control over the chattel must be intentional, the tort of conversion does not rest on proof of specific intent to commit a wrong. *Norriton East Realty Corp. v. Central–Penn National Bank,* 435 Pa. 57, 254 A.2d 637 (1969). Equally fundamental is the corollary principle that a good faith purchaser of the goods from the converter is also a converter and must answer in damages to the true owner. *First Camden National Bank & Trust Co. v. J.R. Watkins Co.,* 122 F.2d 826 (3d Cir.1941) (citing *Carey v.*

*Bright,* 58 Pa. 70 (1868)). As the Supreme Court of Pennsylvania has stated the proposition, "[t]he general rule for chattels is that a bona fide purchaser from a thief gets nothing." *Linwood Harvestore, Inc. v. Cannon,* 427 Pa. 434, 235 A.2d 377 (1967).

Thus, if this case were to be decided solely on the basis of the common law of conversion, without regard to any modifications wrought by the U.C.C., Rishel and VanVoorhis would not be entitled to judgment simply because they are good faith purchasers for value. As the U.C.C. expressly states:

> Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

13 Pa.Cons.Stat.Ann. § 1103 (1984).

Therefore, the issue is whether Article Two of the U.C.C. provides Rishel and VanVoorhis with a defense they would not otherwise have under our common law.[3]

█ The trial court found that this defense arose from Section 2403(a) insofar as it states that a bona fide purchaser for value who purchases from a person with voidable title takes good title. "Voidable title" is not a defined phrase. The trial court concluded that Hixon, the original converter, had

---

**3.** The applicability of Article Two of the U.C.C. to sales of timber is not in doubt and neither party disputes that fact. *See* 13 Pa.Cons.Stat.Ann. § 2107(b).

We do note, however, that in mid–1994 the Pennsylvania legislature enacted Act No. 1994–10, which consists of a new section 8311 to Title 42 of the Pennsylvania Consolidated Statutes entitled "Damages in actions for conversion of timber." The new act provides that in lieu of all other damages or civil remedies, "a person who cuts or removes the timber of another person without the consent of that person shall be liable to that person in a civil action" for the damages specified in the act. The damages calculations provided by the Act vary according to whether the taking of the timber was deliberate or negligent. Since the new Act did not become effective until mid-April 1994, long after the entry of the summary judgments in this case, it is clearly not applicable to this case. Thus, we need not determine whether the provisions of the Act are substantively relevant to our analysis of the issues raised.

voidable title to the cut timber, and therefore could convey good title to VanVoorhis and Rishel. The law in Pennsylvania is contrary to the trial court's interpretation. Pennsylvania law provides that a converter has no title at all, i.e., his title is void, and therefore he can convey nothing to a bona fide purchaser for value. Moreover, since the U.C.C. contains no suggestion that it was intended to alter this legal principle, it is the common law principle that must govern this case.

We find the decision in *Petition of Hennessy,* 343 Pa.Super. 293, 494 A.2d 853 (1985), instructive on this issue. In *Hennessy,* a panel of this court construed U.C.C. Section 2403(a) and concluded:

In order to have voidable title, one must obtain goods through the assent of the original owner, but not necessarily acquired good title.

*Id.* at 298, 494 A.2d at 856. If there has been no such assent, then the title acquired is entirely void and a good faith purchaser takes nothing. *Id.* Thus, the good faith of the purchaser is in no way a defense to an action for conversion by the true owner if the owner never assented to the obtaining of the goods by the person from whom the good faith purchaser bought them.

Our conclusion is consistent with decisions in other jurisdictions where the interplay between Section 2403(a) and the common law of conversion has been at issue. For example, in *Bay Springs Forest Products, Inc. v. Wade,* 435 So.2d 690 (Miss.1983), a strikingly factually analogous case, the Supreme Court of Mississippi was asked to decide whether the good faith of purchasers of converted timber was a defense to a conversion action against them. The court opined that since the U.C.C. gave a purchaser only that title which the seller had power to convey, and since the seller was a converter who, under the common law, had no title at all, the purchaser took nothing. *Id.* at 694 (citing, *inter alia, Whitlock v. Hogrefe,* 278 Or. 739, 740, 565 P.2d 1092, 1093–94 (1977)). Thus, the good faith of the purchaser was no defense to an action for conversion against him. *Id. See also Touch of Class Leasing v. Mercedes–Benz Credit of Canada, Inc.,* 248 N.J.Super. 426,

591 A.2d 661 (1991) (where goods are not obtained through a transaction of purchase but rather are converted, converter has void title and therefore cannot pass good title to good faith purchaser under U.C.C. § 2403(a)); *Suburban Motors, Inc. v. State Farm Mutual Automobile Insur. Co.,* 218 Cal.App.3d 1354, 268 Cal.Rptr. 16 (1990) (nothing in U.C.C. § 2403(a) permits the transfer of voidable title by a thief; where a thief takes property, without the assent of the owner and not in a transaction of purchase, he has *no* title and can convey none to a bona fide purchaser).

Rishel and VanVoorhis argue, however, that the policies underlying the U.C.C. argue in favor of a more liberal reading. They also cite to a Pennsylvania case involving negotiable instruments, *First National Bank of Blairstown v. Goldberg,* 340 Pa. 337, 17 A.2d 377 (1941). They argue that *Goldberg* stands for the proposition that under the circumstances of this case, the good faith of the purchasers should be a defense to a conversion action.[4]

The purposes and policies underlying the Uniform Commercial Code are clearly stated therein as being:

(1) To simplify, clarify and modernize the law governing commercial transactions.

(2) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties.

(3) To make uniform the law among the various jurisdictions.

13 Pa.Cons.Stat.Ann. § 1102(b).

This statement of purpose and policy does not provide a reason for varying the result in this case. Clearly, subsections

---

**4.** In *Bank of Landisburg v. Burruss,* 362 Pa.Super. at 324, 524 A.2d at 900, this court acknowledged that *"Goldberg* stands for the principle that when the question of good faith is raised in response to a conversion claim, it is permissible to consider the objectives of the commercial legislation regulating the exchange of the chattel which the defendant is accused of converting." We have carefully considered this principle but conclude that the substantive provisions of Article Two must prevail. Similarly, in *Landisburg,* the court analyzed provisions of Article Nine and concluded that the good faith of an auctioneer of livestock is not a defense to a conversion action brought by the holder of a security interest in the livestock.

(1) and (3) are inapposite. Only subsection (2), relating to the continued expansion of commercial practice through custom and usage, has any possible application. Rishel and VanVoorhis argue that it is the custom for timber buyers to purchase cut timber from merchants without inspecting documents or otherwise ascertaining whether the timber was lawfully obtained by the merchant. On the basis of this custom alone they wish us to decide that the common law of conversion should not apply to them.

We do not accept this argument. Although we agree that a purpose of the U.C.C. is to facilitate the flow of commerce through custom and usage, without legislative direction the policy cannot in itself alter the common law and therefore the interplay between the common law and U.C.C. If the drafters of Article Two of the U.C.C. intended to effect a change in Pennsylvania common law, they could have done so in more specific language. Instead, they have provided only that a person with voidable title, i.e. *not* a converter, can transfer good title to a good faith purchaser for value, and that a buyer in the ordinary course can take good title from a merchant to whom the goods were "entrusted." We have concluded that neither of these provisions apply in this case. The protection sought by purchasers in the position of Rishel and VanVoorhis must come from the legislature not the courts. Although the goal of facilitating the flow of commerce through custom and usage is important, it is up to the legislature to enact law that will implement it.

■ Given this conclusion, we must now proceed to determine whether the trial court was correct in granting summary judgment on the alternate ground that Underhill, the owner of the timber, had "entrusted" it to Hixon, a timber merchant, thereby enabling him to pass good title to Rishel and VanVoorhis as buyers in the ordinary course under Section 2403(b). As we have indicated above, section 2403(c) defines entrusting to mean delivery or acquiescence in retention of possession. Relying on this definition, the trial court here found that the record established that Underhill had entrusted the timber to Hixon. In the trial court's words, "[Hixon's] removal of the

timber was uncontested for several months following the notice given to Plaintiff which is sufficient to constitute acquiescence required for the entrustment of goods."

Summary judgment for Rishel and VanVoorhis based on an entrustment theory is not warranted.[5] At the outset, we reiterate that in deciding a motion for summary judgment a court does not engage in the finding of facts, but rather must determine whether the record reveals that there is *no genuine issue* as to a material fact. Pa.R.C.P. 1035(b); *Kelly by Kelly v. Ickes,* 427 Pa.Super. 542, 547, 629 A.2d 1002, 1004 (1993). Here, the question of fact is whether Underhill ever delivered the timber to Hixon or acted in a manner indicating acquiescence in Hixon's retention of possession of the timber. Our thorough review of the record convinces us that there are indeed genuine issues as to these questions of fact in this case.

Hixon testified that Underhill never communicated to him that it considered itself the owner of this timber prior to the time when Hixon cut the timber. He did not testify, however, that he was ever given permission to cut the timber, nor did he state that Underhill ever did anything after the timber was cut to indicate that it acquiesced in Hixon's retention thereof. Moreover, Underhill's President, Mr. Palumbo, testified that everyone working in the area knew that the land on which the timber was located belonged to Underhill, that he never gave Hixon permission to cut the timber there, and that he acted quickly to stop the cutting as soon as he received information leading him to believe that Hixon was taking timber that belonged to Underhill. Based on our review, this record reveals a genuine factual issue on the question of entrustment.[6]

**5.** We note that neither Rishel nor VanVoorhis moved for summary judgment on this ground. We find no reference in either motion for summary judgment to the entrustment theory.

**6.** The trial court's opinions do not contain references to the record in support of its conclusion. Thus, we cannot ascertain what deposition testimony or documentary evidence the court may have relied upon in concluding that there is no genuine issue of fact as to whether Underhill entrusted the converted timber to Hixon. We can only indicate that we have found nothing that would yield a similar conclusion.

■ Lastly, we deal with the trial court's conclusion that the principles expressed in *Linwood v. Harvestore, supra,* preclude Underhill's suit against Rishel and VanVoorhis as a matter of law. The trial court relied on *Linwood* for the proposition that because Underhill had exercised its option to seek a judgment against Hixon, the original convertor, Underhill was barred from recovering a judgment against Rishel and VanVoorhis. We find that the trial court erred in its interpretation and application of the pertinent law.

In *Linwood,* plaintiff brought replevin actions alleging conversion of certain equipment owned by plaintiff. Plaintiff alleged that a third party had converted his equipment and that it was then purchased by the defendants in the replevin actions. Plaintiff had already recovered a judgment in assumpsit against the alleged third party converter. Defendants sought summary judgment, *inter alia,* on the ground that plaintiff's recovery of an assumpsit judgment against the original converter constituted a ratification of the converter's sale of the equipment to the defendants and of their title to the equipment. *Id.* 427 Pa. at 435–36, 235 A.2d at 379.

Although the *Linwood* court agreed that there was Pennsylvania precedent that suggested that the plaintiff's mere recovery of an assumpsit judgment against the converter might well be a bar to the replevin actions, it did not render a decision on that question in the case before it. The court held that since the principle that the plaintiff's assumpsit judgment against the converter might bar a later action against the ultimate purchasers would only apply if the purchasers had acted in good faith, and since the record before the court revealed a factual dispute as to the purchasers' good faith, summary judgment in their favor was inappropriate. *Id.* at 436–38, 235 A.2d at 379–80.

Clearly *Linwood* is not controlling in the instant case. First, the *Linwood* court never actually decided whether simply recovering a judgment against the convertor bars any

later action against a good faith purchaser.[7] Moreover, we note that at the time that summary judgment was entered for Rishel and VanVoorhis, Underhill had not yet recovered its judgment against Hixon. The judgment against Hixon was entered several weeks later. Thus, Rishel and VanVoorhis are attempting to justify the entry of summary judgment in their favor by relying on events that had not yet occurred when summary judgment was entered.

In sum, we find nothing in *Linwood* or any other Pennsylvania precedent that suggests that summary judgment for Rishel and VanVoorhis was justified merely because Underhill recovered a judgment in conversion and trespass against Hixon some weeks *after* summary judgment for Rishel and VanVoorhis had already been entered.

The order of the trial court is reversed. The matter is remanded for further proceedings. Jurisdiction is relinquished.

JOHNSON, J., files a concurring statement.

JOHNSON, Judge, concurring.

I agree with so much of the Opinion written by my distinguished colleague Judge Beck, as reverses the order granting summary judgment. However, I do not read the trial court Opinion as expressly precluding suit based on *Linwood Harvestore, Inc. v. Cannon*, 427 Pa. 434, 235 A.2d 377 (1967). The trial court stated that it was not appropriate for Underhill Coal Mining Company to seek a judgment against Hixon, having already exercised the option to seek judgments against VanVoorhis and Rishel. I do not find this position to be inconsistent with the narrow holding in *Linwood Harvestore, supra.*

---

7. We note in addition that the law of Pennsylvania actually provides that although a plaintiff may recover judgments against all parties responsible for a given loss, only one satisfaction for that loss may be had. *Grossman v. Rosen*, 424 Pa.Super. 463, 467, 623 A.2d 1, 3 (1993).