Carl SHERRY and Ruth Sherry, Plaintiffs,

v.

ASSOCIATES COMMERCIAL CORPORATION, and Abbey Recovery, Defendants.

No. Civ.A. 97–43J.

United States District Court, W.D. Pennsylvania.

Sept. 29, 1998.

Ronald P. Carnevali, Jr., James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, for plaintiffs.

Thomas E. Reilly, Davis Reilly, Pittsburgh, PA, for Associates Commercial Corporation, defendant.

Stephen M. Elek, Pittsburgh, PA, for Abbey Recovery, defendant.

Robert E. Durrant, Shelly R. Pagac, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for Monroeville Borough, defendant.

## MEMORANDUM and ORDER

D. BROOKS SMITH, District Judge.

### I. *Introduction*

This civil rights action arises out of an allegedly wrongful repossession of two vehicles by a private entity which occurred in the presence of two municipal police officers. I must determine whether the private entity's conduct constituted state action, thereby exposing the private entity to liability under 42 U.S.C. § 1983.

### II. *Facts*

Plaintiffs, Carl and Ruth Sherry, are proprietors of a trucking business which they operate from their residence in northern Cambria County, Pennsylvania. Dkt. no. 43, exh. 1, ¶ 3. Mrs. Sherry maintained the books for the business and Mr. Sherry did the driving. *Id.* exh. 13, at 8, 12. Mr. Sherry hauled coal when the business began in 1990. In 1993, when area coal mines were closing, he purchased a 1989 Western Star tractor trailer and "started hauling trash out of Philadelphia." *Id.* exh. 2, exh. 13, at 8. Eventually, he was hauling "steel going east, trash coming back." *Id.* Plaintiffs purchased three additional tractors during the remainder of 1993 and the beginning of 1994: a 1985 tractor made by White, a 1978 GMC, and a 1984 Peterbilt. *Id.* exhs. 4, 6, 8. Defendant Associates Commercial Corporation (hereinafter "Associates") held a perfected security interest in each of the four tractors. Dkt. no. 43, exh. 9, ¶ 6.

In early 1995, Mr. and Mrs. Sherry filed a petition under chapter seven of the bankruptcy code. *See* dkt. no. 43, exh. 9. On March 10, 1995, the bankruptcy court granted Associates relief from the automatic stay with regard to the 1979 GMC and the 1985 White tractors which the Sherrys agreed to surrender. *Id.*; exh. 1, ¶ 9. The bankruptcy court denied relief from stay as to the 1989 Western Star and the 1984 Peterbilt tractors noting that the debtor was "current on all payments due and owing" and had "agreed to continue to make the contractually required payments...." Dkt. no. 43, exh. 9, ¶ 12. Notably, the court concluded that the obligation for each of the four tractors "is a separate and distinct obligation." *Id.* ¶ 9. A discharge was granted by order dated April 17, 1995. Dkt. no. 43, exh. 10. Associates subsequently obtained relief from the automatic stay in July 1995 as to the 1984 Peterbilt and the 1989 Western Star. *Id.* exh. 11.

An individual who identified himself as Mr. Adams contacted the Sherrys' trucking business on September 3, 1995 and spoke with Mrs. Sherry about hauling a load of steel from Pittsburgh to Philadelphia. Dkt. no. 43, exh. 13, at 35–36. Mr. Sherry returned the call, and on September 5, 1995, his son confirmed that he and his father were to pick up a load of steel at

a Monroeville parking lot later that afternoon. *Id.* at 37–38. Consistent with the plans, Mr. Sherry and his son drove the 1989 Western Star and the 1984 Peterbilt to the parking lot to wait for the load of steel.

What ensued is disputed, but construing the evidence in favor of the Sherrys, as I must, Mr. Sherry was in his vehicle completing an entry in his logbook and "heard a vehicle pull in[.]" *Id.* at 38. "[I]t was a wrecker [with] Abbey Recovery's name on the door." *Id.* The wrecker positioned itself in front of the truck. A patrol unit from the Monroeville Police Department also arrived and the officers positioned their patrol unit behind the wrecker. *Id.* Abbey Recovery had contacted the Monroeville Police Department at 2:29 p.m. that day requesting "assistance in repossessing two tractor trailer trucks...." Dkt. no. 43, exh. 14 (log from police records).

Mr. Sherry exited his vehicle and confronted David Vickers, who was positioned between the truck and the wrecker. *Id.* at 45. Mr. Vickers indicated that he was there "for Associates[,]" and that he was "repossessing your trucks." *Id.* at 39. Mr. Sherry objected, explaining that the payments were made and that Vickers had no right to repossess them. Mr. Vickers persisted and handed Mr. Sherry an illegible facsimile of a document. In Mr. Sherry's view, neither his son nor the police officers were close enough to hear his conversation with Mr. Vickers. *Id.* at 44.

As the confrontation between the two men grew louder, one of the police officers approached Mr. Sherry and Mr. Vickers. *Id.* at 40. Mr. Sherry held the facsimile out to the police officer and said, "You are going to let them take these trucks on this kind of paperwork?" *Id.* at 40. The officer responded, "Yes. They have a repo order." *Id.* Mr. Sherry continued to object, noting that he had made the payments and commenting that Abbey had "no right to these trucks." *Id.* at 41. In response, the officer said, "You have to let them have the trucks." *Id.*

At that point, Mr. Sherry "figured this will have to be settled in a court of law." *Id.* at 42. He regarded the police officers as "there to help Abbey recover these trucks one way or the other." *Id.* For that reason, Mr. Sherry "gave them up[.]" *Id.* In response to a comment made by one of Abbey Recovery's representatives after Mr. Sherry surrendered the trucks, the police officer told the Abbey Recovery representative to " 'Calm down,' or 'Cool Down. You are taking these peoples' livelihood away[.]" *Id.* at 65.

The police officers transported Mr. Sherry and his son to a nearby shopping mall at 2:59 p.m. *Id.* at 43; dkt. no. 43, exh. 14. From there, the Sherrys were able to arrange for a ride home. The record fails to establish that there was any agreement between the officers and Abbey Recovery that the officers would assist in the repossession. Indeed, Officer Fisher affirmed that it was his understanding that the unwritten policy of the department is that the officers are not to intervene unless "there are physical and verbal types of altercations." Dkt. no. 43, exh. 15, at 8.

After a notice of repossession dated September 20, 1995 from Associates advised the Sherrys that the trucks would be sold on October 13, 1995, Mr. Sherry consulted the attorney who handled his bankruptcy case about the repossession. Dkt. no. 1, exh. 1. Counsel advised Associates by letter that the repossession was wrongful and that the vehicles should not be exposed to sale. *Id.* The letter included photocopies of the checks which had been tendered for each month's payment, as well as proof of insurance. A demand for the return of personal property contained in the trucks was also conveyed. *Id.*

On February 19, 1997, Mr. and Mrs. Sherry filed suit against Abbey Recovery, Associates, Monroeville Borough and the two Monroeville Police Officers who were present at the repossession. Dkt. no. 1. Plaintiffs alleged that each of the defendants had deprived them of their right to due process in violation of the Fourteenth

Amendment, made actionable by 42 U.S.C. § 1983. Dkt. no. 1. An amended complaint alleged that defendants were also liable under state law for breach of the peace, wrongful replevin and conversion. Dkt. no. 19. Summary judgment motions were filed by all of the defendants submitting that plaintiffs' § 1983 claim, as well as the state law claims, fail as a matter of law.

Plaintiffs have dismissed their claim against the Monroeville defendants, conceded that their § 1983 claim against Associates fails as a matter of law, and that Pennsylvania does not recognize a civil claim for breach of peace. Accordingly, I must determine whether plaintiffs' have a viable § 1983 claim against Abbey Recovery and whether summary judgment should be granted in favor of Abbey Recovery and Associates on the state law claims of wrongful repossession and conversion.

### III. *Standard of Review*

Summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Accordingly, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[S]ince a complete failure of proof concerning an essential element," *id.* at 323–24, 106 S.Ct. 2548, on which a party bears the burden of proof at trial establishes that the moving party is "entitled to a judgment as a matter of law," the nonmoving party must establish the existence of every element essential to his case, *id.*

Once the moving party has satisfied its burden, the nonmoving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits or other admissible evidentiary material to establish that there is a genuine issue of material fact for trial. *Clark v. Clabaugh,* 20 F.3d 1290, 1294 (3d Cir. 1994). That is, the nonmoving party "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)). In determining whether a nonmovant has established the existence of a genuine issue of material fact requiring a jury trial, the evidence of the nonmovant must "be believed and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

### IV. *State Action Under § 1983*

■ Section 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. § 1983. This statute affords a remedy for deprivations of rights created by federal law, *Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), but the redress available under the statute is limited and a private person will not be subjected to liability unless the alleged deprivation was committed under color of law. *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir.1995).

The Supreme Court has clarified that "[i]n cases under § 1983, 'under color of law' has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."

*Id.* (quoting *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (quoted in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 928, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982))). Be-

cause the "color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir.1995).

The Supreme Court jurisprudence on state action has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar*, 457 U.S. at 937, 102 S.Ct. 2744. In *Lugar*, an oil supplier brought suit against a lessee-operator of a truckstop and sought prejudgment attachment pursuant to state law. Under the prejudgment attachment procedure, a creditor was required only to allege, in an *ex parte* application, that he believed that the debtor was disposing of or might dispose of his property in an effort to defeat creditors. A state court clerk issued an attachment, and the County Sheriff executed on the lessee-operator's property. Over a month later, a state judge declared that the oil supplier had not proven the requisite statutory grounds for attachment.

The Supreme Court declared in *Lugar* that for there to be "fair attribution" of the deprivation of a federal right to a state, a two-part test must be met:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.*

The right to self-help repossession has been authorized in Pennsylvania through enactment of the Uniform Commercial Code, 13 Pa.C.S.A. § 9503, and the Motor Vehicle Sales Finance Act, 69 P.S. § 623. Because the record before me does not support any other conclusion than that Abbey Recovery, on behalf of Associates,

was asserting a right under either or both of the foregoing statutes, I will assume, without deciding, that the first part of the *Lugar* test is satisfied. I, therefore, decline to address *sua sponte* the question of whether a right to self-help repossession exists other than as "created by the State."

In *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 621, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Court observed "certain principles of general application" governing the second part of the *Lugar* test. It stated:

> Our precedents establish that, in determining whether a particular action or course of conduct is governmental in character, it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority.

*Id.* at 621–622, 111 S.Ct. 2077 (citations and quotation marks omitted).

 The Third Circuit has distilled from the Supreme Court jurisprudence

> several approaches or discrete tests for detecting the presence of action under color of state law. The tests have included the exclusive government function approach, the joint participation or symbiotic relationship approach, and the nexus approach.

*Groman*, 47 F.3d at 639; *see also Mark*, 51 F.3d at 1142; *McKeesport Hosp. v. Accreditation Council for Graduate Medical Education*, 24 F.3d 519, 524–25 (3d Cir. 1994). In addressing the issue of whether a private entity's conduct constitutes state action, the Third Circuit's approach has been to consider the applicability of each test to the facts at hand. *Mark*, 51 F.3d at 1142; *Groman*, 47 F.3d at 641–42; *McKeesport Hosp.*, 24 F.3d at 524–25. The court's analyses are instructive because the thrust of each decision has been that the private entity may be deemed a

state actor only when the connection between that entity and the state is extensive and significant. For example, in *Groman,* the Third Circuit instructed that "[w]hile the exact contours of this state action inquiry are difficult to delineate, the interdependence between the state and private actor *must be pronounced* before the law will transform the private actor into a state actor." *Groman,* 47 F.3d at 641 (emphasis added). Likewise, in *Mark,* the court's conclusion that the volunteer fire company was a state actor was based on the fact that the Borough and the fire company "are intertwined to a great extent" and the "Borough actively encourages it to perform a municipal duty." 51 F.3d at 1148. Mere observation of a private entity's conduct, or the approval of or acquiescence in a decision, without more, however, will not establish the nexus necessary to constitute state action. *McKeesport Hosp.,* 24 F.3d at 524–25 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Similarly, the mere receipt of public funding or the provision of a service to the public, standing alone, is not enough to convert the private actor's conduct into state action. *Groman,* 47 F.3d at 640.

■ Here, the plaintiffs do not assert that Abbey Recovery's conduct qualifies as state action under the governmental function or symbiotic relationship test. Rather, they contend that summary judgment should be denied because there is a genuine issue of material fact concerning whether Abbey Recovery "received significant aid from state officials in effecting the constitutional deprivation." Dkt. no. 42, at 8. I cannot agree.

Application of the general principles set forth in *Edmonson,* 500 U.S. at 621–22,

111 S.Ct. 2077, demonstrate the absence of any relationship between Abbey Recovery and Monroeville Borough.[1] Accordingly, the existence of state action hinges upon the extent of the "aid" rendered by the Monroeville police officers.

The Supreme Court has admonished the lower courts to "pay close attention to the facts of each case while conducting the state action inquiry." *Groman,* 47 F.3d at 641 (citing *Lugar,* 457 U.S. at 939, 102 S.Ct. 2744). Here, the police officers who arrived at the scene did so to preserve the peace and not to assist Abbey Recovery in a repossession. Rather than take sides in the confrontation between Mr. Vickers and Mr. Sherry, the officers remained at a distance which prevented them from even hearing what was being said by the two men. *Cf. McKeesport Hosp.,* 24 F.3d at 524 (state official's observation of private entity's conduct fails to establish state action by private entity). As tempers flared, one officer walked toward Sherry and Vickers but said nothing until Sherry spoke to him first. The question that Sherry directed to the officer actually suggested to the latter that he should intervene on Sherry's behalf to stop the repossession. While the officer's response, characterizing Abbey Recovery's documentation as a "repo order," was legally inaccurate, it did not "provide[ ] a mantle of authority that enhanced the power of the harm-causing individual actor." *Nat'l Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 192, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988).

A state actor's mistake of law or erroneous determination of legal responsibility should not be a sufficient basis for shifting the state actor's "mantle of authority" to

---

**1.** First, nothing in the record suggests that Abbey Recovery receives any monetary aid from Monroeville Borough. *Cf. Mark,* 51 F.3d at 1148 (fact that volunteer fire company received financial benefits from Borough because of fire tax one factor weighing in favor of determination that fire company was state actor). Nor can it be said that the repossession of chattels is a traditional governmental function, *cf. Mark,* 51 F.3d at 1145, (fire protection is a governmental function in Pennsylvania), or that Monroeville Borough delegated this responsibility to Abbey Recovery. To be sure, the repossession of chattels does not constitute the provision of a service for the benefit of Monroeville Borough residents. *Cf. Mark,* 51 F.3d at 1144–48 (recognizing that volunteer fire company provided a service of the " 'highest importance' ") (citation omitted).

the private actor who sought his assistance. Something more is required. Were that not so, every request by a party to a dispute that a police officer intervene would have the potential for section 1983 liability where the officer: (1) determined at the scene that one disputant's claim of right was superior to the other's; and (2) that determination was later held to be legally incorrect.

This result is consistent with *Edmonson*, 500 U.S. at 614, 111 S.Ct. 2077, where the Court considered whether a private civil litigant's use of peremptory challenges constituted state action which violated the equal protection rights of the challenged jurors. There, the Court concluded that the private litigant was a state actor because its conduct could not have occurred without the government's participation in the peremptory challenge system. *Id.* at 622, 111 S.Ct. 2077. In other words, the litigant completely relied upon the government's assistance to effect the deprivation. *Id.* at 621, 111 S.Ct. 2077 ("the extent to which the actor relies on governmental assistance and benefits" is a consideration relevant to state action inquiry). Here, the self-help remedy of repossession is not dependent upon the government's assistance. In fact, it is routinely undertaken without the "overt, significant assistance" of a state official. *Id.* at 624, 111 S.Ct. 2077.

State action is a prerequisite to liability under § 1983. Because I conclude that the police officers' aid was not significant since it contributed nothing to the remedy of self-help repossession which Abbey Recovery was free to pursue in the officers' absence, plaintiffs' claim that Abbey Recovery deprived them of their constitutional right to due process cannot survive summary judgment. *Groman*, 47 F.3d at 638.

### V. *Wrongful Replevin*

■ Associates submits that plaintiffs' wrongful replevin claim fails because it is undisputed that a replevin action was never filed. I agree with Associates. Plaintiffs have recharacterized their claim in their opposition to the summary judgment motions as one for wrongful repossession. I am unable to find any Pennsylvania authority recognizing such a cause of action, however, and will grant summary judgment on this claim.

### VI. *Conversion*

■ Conversion is " 'the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification' " *Underhill Coal Min. Co. v. Hixon*, 438 Pa.Super. 219, 652 A.2d 343, 345 (1994) (quoting *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 197 A.2d 721, 726 (1964)). Although I have credited Mr. Sherry's version of the repossession for purposes of deciding the state action inquiry, the circumstances surrounding the repossession are disputed and a jury will need to determine whether Mr. Sherry consented to the repossession. Accordingly, summary judgment must be denied.[2]

An appropriate order follows.

### ORDER

AND NOW, this, 29th day of September, 1998, consistent with the foregoing memorandum, it is hereby

ORDERED AND DIRECTED that the motions for summary judgment filed by defendants Abbey Recovery and Associates Commercial Corporation, docket nos. 30, 35, are GRANTED IN PART and DENIED IN PART as follows: summary

---

**2.** Whether Associates was legally justified in repossessing the trucks in light of the bankruptcy court's conclusion that the obligations were separate and distinct cannot be determined on this record, which fails to include the parties' submissions to the bankruptcy court on the two motions for relief from stay, as well as any evidence regarding the amount of any insufficiency remaining on the 1985 White and the 1979 GMC.

judgment is granted in favor of the defendants and against the plaintiffs on plaintiffs' § 1983 claim; summary judgment is granted in favor of the defendants and against the plaintiffs on plaintiffs' wrongful replevin claim; summary judgment is denied on the plaintiffs' state law claim of conversion. It is further ORDERED that the parties shall attend a pretrial conference on *Wednesday, October 14, 1998* in Room 104, 319 Washington Street, Johnstown, Pennsylvania at *1:30 p.m.* to discuss issues related to settlement and trial.