

Villanova University School of Law
Villanova University School of Law Digital Repository

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2007

# Mitchell v. Gieda

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2127

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Mitchell v. Gieda" (2007). *2007 Decisions.* Paper 1668.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1668

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-2127

———————

WILLIAM G. MITCHELL, MARY ELIZABETH
MITCHELL, Individually and t/b/d/a Mitchell's Restaurant,
Appellants

v.

ANTHONY GIEDA; ROBERT OLECKI;
CITY OF SCRANTON

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Civil No. 03-cv-01960
District Judge: The Honorable Malachy E. Mannion

———————

Submitted Under Third Circuit LAR 34.1(a)
January 29, 2007

———————

Before: BARRY, ROTH, Circuit Judges, and DEBEVOISE,[*] District Judge

(Opinion Filed: February 6, 2007)

———————

OPINION

———————


BARRY, Circuit Judge

———————

   [*] The Honorable Dickinson R. Debevoise, Senior District Judge, United States District
Court for the District of New Jersey, sitting by designation.

Appellants, William G. and Mary Elizabeth Mitchell, appeal the District Court's entry of summary judgment against them in this civil rights action brought pursuant to 42 U.S.C. § 1983. Because we agree with the District Court that the actions of Anthony Gieda and Robert Olecki, Jr. do not constitute state action, we will affirm.

## I.

The Mitchells owned and operated Mitchell's Restaurant, a Scranton, Pennsylvania establishment located on the first floor of a building owned by Dominick and Joyce Degilio. As part of the lease agreement for that space, dated January 3, 2002, the Degilios agreed to allow the Mitchells to use some of their restaurant equipment in the conducting of their business and the parties agreed to work out a payment plan for the eventual purchase of the equipment by the Mitchells. Appellants' App. Vol. 2 at 4. By May 2003, the Degilios had arranged for the sale of the building to a third party. Prior to the closing, the Degilios sought payment for their equipment or, if that was not forthcoming, repossession.

Having failed to reach an agreement for the sale, the Degilios notified the Mitchells that on the morning of Saturday, May 31, 2003, they planned to repossess their equipment. Because the restaurant was closed on Saturdays, and because their lawyer advised them "to stay away," the Mitchells did not plan to go to the restaurant that morning. Supp. App. at 23, 26.

On the morning of May 31, at approximately 8:00, Dominick Degilio and a group of friends, including Robert Olecki, Jr., his nephew by marriage, arrived at Mitchell's

2

Restaurant. Olecki, a Scranton police officer, was off-duty at the time and was wearing his pajamas. The group waited for the Mitchells to arrive for approximately one hour. Then, sensing that "something was amiss" because of the Mitchells' failure to appear, and not wanting to enter the building without the presence of a neutral, on-duty police officer, Olecki recommended that Degilio ask that an officer come to the restaurant. Supp. App. at 15, 41. As a result, Officer Anthony Gieda, an on-duty Scranton police officer, arrived on the scene as a "precautionary measure" to "keep order." Appellants' App. Vol. 2 at 26–27.

Degilio explained the situation to Gieda and presented him with a list of the equipment he planned to remove. Gieda indicated that Degilio could "[g]o ahead" with the repossession. Supp. App. at 15. Degilio continued to wait for the Mitchells, and, after some time, Gieda informed him that he had "to make a decision" about whether he planned to enter the restaurant, because otherwise Gieda needed to leave the scene to handle other matters. Supp. App. at 16. Degilio decided to enter the restaurant, gaining access using his set of keys. After a brief delay, the security alarm sounded.

After the alarm had sounded for some time, Gieda disconnected it.[1] Degilio and his party then began removing the equipment as Gieda looked on.[2] Shortly thereafter, the

---

[1] It is unclear whether Gieda offered to disconnect the alarm or if Degilio requested that he do so. Appellants' App. Vol. 2 at 23; Supp. App. at 16.

[2] The parties dispute Olecki's role in this phase of the repossession. Because we must view the underlying facts in the light most favorable to the Mitchells, we will take as true their allegations that Olecki entered the restaurant and helped remove equipment.

Mitchells arrived at the restaurant. Gieda spoke to both of them, explaining that Degilio had been informed by his lawyer that he was allowed to repossess the equipment. After William Mitchell became upset, Gieda asked him to go outside, where he continued to talk to him about the situation.

The removal of the equipment took over an hour. Upon completion, Gieda left the scene. The Mitchells were later forced to have their alarm repaired, and Gieda was reprimanded by his superiors for his actions regarding the alarm.

The Mitchells brought this action in United States District Court for the Middle District of Pennsylvania, alleging that Olecki, Gieda, and the City of Scranton deprived them of their property without due process of law, in violation of the Fourteenth Amendment, and summarily and without a warrant seized their property, in violation of the Fourth Amendment. The parties consented to the exercise of jurisdiction by Magistrate Judge Malachy E. Mannion. In a thoughtful opinion, Judge Mannion granted appellees' motion for summary judgment. The Court ruled that Olecki acted "solely as a private party" in helping his uncle, and that he did not in any way "hold himself out as a police officer," "exercise[] any authority as a police officer," or display any "indicia that he was acting in his official capacity." Mem. & Order, dated Mar. 23, 2006 ("M & O"), at 15. As for Gieda, the Court determined that he acted as a "neutral peace officer" because he did not assist in the repossession, intimidate the Mitchells, or "otherwise use[] his authority to ensure compliance." M & O at 16–17.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a district

4

court's order granting summary judgment is plenary. <u>Reese Bros., Inc. v. United States</u>, 447 F.3d 229, 232 (3d Cir. 2006). We "may affirm the district court's order if, when viewing the evidence in the light most favorable to the non-moving party, there is 'no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " <u>Id.</u> (quoting Fed. R. Civ. P. 56(c)).

## II.

In order to state a claim under 42 U.S.C. § 1983, " 'a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.' " <u>Harvey v. Plains Twp. Police Dep't</u>, 421 F.3d 185, 189 (3d Cir. 2005) (quoting <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)). To satisfy the state action requirement, a plaintiff must show that the defendant "used authority derived from the state in causing the alleged harm." <u>Id.</u>

Although police officers are undoubtedly state actors, <u>see</u> <u>Abbott v. Latshaw</u>, 164 F.3d 141, 146 (3d Cir. 1998), "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law," <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 816 (3d Cir. 1994); <u>see</u> <u>Screws v. United States</u>, 325 U.S. 91, 111 (1945); <u>Pitchell v. Callan</u>, 13 F.3d 545, 547–49 (2d Cir. 1994), and an officer's presence at the scene of, and acquiescence in, a private repossession is not state action unless accompanied by affirmative intervention, aid, intimidation, or other use of power which converts him from a neutral third party to, in effect, an assistant of

the repossessing party, see, e.g., Harvey, 421 F.3d at 190–91; Barrett v. Harwood, 189 F.3d 297, 302–03 (2d Cir. 1999); Abbott, 164 F.3d at 146–47; Jones v. Gutschenritter, 909 F.2d 1208, 1213–14 (8th Cir. 1990); Booker v. City of Atlanta, 776 F.2d 272, 273–74 (11th Cir. 1985); United States v. Coleman, 628 F.2d 961, 964 (6th Cir. 1980); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 513 (5th Cir. 1980).

### III.

The Mitchells argue that the actions of Olecki and Gieda constituted state action because "Olecki had previously arranged with his uncle . . . to enter [their] restaurant and seize the leased equipment," and Gieda "chose sides in imposing his will upon [them]." Appellants' Br. at 11–12. We disagree.

First, we have no trouble concluding that Olecki acted in a purely private capacity. On the morning in question, Olecki did not act with police authority, purport to act with such authority, or otherwise display any indicia of such authority. He was not on-duty at the time, he was not wearing his uniform, and he acted in the role of Dominick Degilio's nephew. His activities on the morning at issue were undoubtedly "purely private acts" and therefore "not acts under color of state law." Barna, 42 F.3d at 816.[3] As such, his part in the removal of equipment from the restaurant is of no moment.

---

[3] Appellants' argument that Olecki's behavior was improper because he "was present at [the Mitchells'] restaurant solely at the request of his uncle" and "advised his uncle" that an on-duty police officer should be present because "something was amiss," see Appellants' Br. at 27, is puzzling and misplaced. If anything, these facts further buttress the conclusion that Olecki acted not as a police officer, but as a nephew who was attempting to assist his uncle. See M & O at 16.

6

Second, although a somewhat closer question,[4] we agree with the District Court that Gieda acted solely as a neutral peace officer. The record is clear that Gieda was dispatched to a "civil matter" to "keep order" in the event that a violent confrontation ensued between the landlord and his tenants. Appellants' App. Vol. 2 at 20, 27. Upon arrival, Gieda did not order the repossession to take place, but, rather, explained that Degilio could "[g]o ahead" while expressly indicating that it was Degilio's "decision" to make as to whether to enter the restaurant. Supp. App. at 15–16. Gieda did not physically assist in the removal of the equipment and there is no testimony that he intimidated the Mitchells upon their arrival or otherwise deterred them from objecting to the repossession. Rather, he explained to them what was going on and only asked William Mitchell to step outside the restaurant when he became upset. All of these actions amount simply to acquiescence in the repossession and presence at the scene to prevent the onset of violence. See, e.g., Abbott, 164 F.3d at 147; Coleman, 628 F.2d at 964.

The only act by Gieda that gives us pause is his disconnecting of the alarm at the Mitchells' restaurant. In the end, however, unlike threatening to arrest one who resists repossession, see Abbott, 164 F.3d at 147, visiting a tenant alone and instructing him to quit the property, see Howerton v. Gabica, 708 F.2d 380, 381, 384 (9th Cir. 1983), or ordering a landlord to open an apartment door when she would not otherwise do so, see

---

[4] Perhaps acknowledging the limited role played by Gieda at the repossession, appellants argue that it is the "conduct of Olecki that is even more shocking." Appellants' Br. at 27. As discussed above, Olecki's actions fall far short of constituting state action.

<u>Harvey</u>, 421 F.3d at 190–91, Gieda's disconnecting of the alarm simply does not rise to the level of critical involvement which would support a finding of state action, <u>see</u> <u>Barrett</u>, 189 F.3d at 302.

Given that Degilio had the keys to the restaurant and had already opened the door, it is clear that he could have accomplished the repossession with or without Gieda's assistance. No assertions have been made that Degilio would have refrained from repossessing the equipment had the alarm continued to sound. In addition, the disconnecting of the alarm did not in any way impede the Mitchells from objecting to the repossession, especially since they were aware of the time of the planned repossession and had, in fact, planned "to stay away" because they believed if Degilio entered the restaurant he would be "break[ing] [the] lease" and therefore "at fault." Supp. App. at 26. As such, Gieda's disconnecting of the alarm "was not significant since it contributed nothing to the remedy of self-help repossession" which Degilio was "free to pursue" in Gieda's "absence." <u>Sherry v. Assocs. Commercial Corp.</u>, 60 F. Supp. 2d 470, 476 (W.D. Pa. 1998) (Smith, J.), <u>aff'd</u>, 191 F.3d 445 (3d Cir. 1999).[5]

In sum, we find that the actions of Olecki and Gieda do not constitute state action in aid of Degilio's repossession of equipment from Mitchell's Restaurant. As such, no action can lie against the City of Scranton. <u>See</u> <u>Barrett</u>, 189 F.3d at 303–04.

---

[5] That Gieda was later reprimanded for disconnecting the alarm is irrelevant to the question of whether his action so significantly aided Degilio so as to constitute state action.

## IV.

For the foregoing reasons, we will affirm the order of the District Court.